Slocum Straw Works, Appellant, vs. Industrial Commission and another, Respondents.

*May 12—June 21, 1939.*

For the appellant there were briefs by *Wood, Warner & Tyrrell,* and oral argument by *Jackson M. Bruce,* all of Milwaukee.

*Stanley Rector* and *Arthur Barber,* both of Madison, for the respondent Industrial Commission.

MARTIN, J. The facts are not in dispute. In brief, they are as follows: Mrs. Rybacki was employed by appellant from December 11, 1937, to May 8, 1938, during which period she had worked fifteen hours or more per week for not more than twenty weeks, which was the total period of employment during the fifty-two weeks preceding May 8, 1938. Mrs. Rybacki subsequently made application to the Industrial Commission for unemployment compensation benefits under ch. 108, Stats. 1937. Appellant notified the commission in writing of its rejection of the claim upon the ground that Mrs. Rybacki was, after leaving its employ, customarily self-employed, and, therefore, not eligible for unemployment benefits. On May 15, 1938, a deputy designated by the Industrial Commission, without a hearing, determined that her claim for unemployment compensation was valid and approved a weekly benefit rate of fifteen dollars; also determined that the number of credit weeks against which benefits might be charged was nineteen, and that $71.25 was the maximum amount of benefits which might become payable. Plaintiff appealed from the determination of the deputy to the appeal tribunal appointed by the Industrial Commission to hear and determine such appeals pursuant to law. A hearing was had before such appeal board at which evidence was taken. The appeal tribunal composed of a deputy appointed by the Industrial Commission, a representative of employers, and a representative of labor, made and filed a decision in writing, in which the board held that the employee, Mrs. Rybacki, was not customarily self-employed within the mean-

ing of sec. 108.04 (5) (g), Stats., and that she was therefore entitled to unemployment benefits. Appellant appealed from the decision of the appeal board to the Industrial Commission. The Industrial Commission reviewed the evidence, and without further hearing concluded that the findings of fact of the appeal tribunal were supported by the evidence, and affirmed the decision of the appeal tribunal. Thereupon this action was brought to review the award of the Industrial Commission. The trial court affirmed the findings and order of the Industrial Commission. The only findings made are as follows:

"The employee is a married woman living with her husband and child. She has been seasonably employed by the employer who is engaged in the manufacture of straw hats. The past season she started working in December and was laid off in April.

"The employee and her family live at her father's home. No rent is paid for the use of the house, but the employee's father lives with her as a member of the family. This arrangement was in effect during the time the employee worked for the employer as well as when she was unemployed. While not employed by this employer, her time was spent in the performance of her household duties.

"In the fifty-two weeks preceding the seasonal layoff here in question, there were not more than twenty weeks in which she worked fifteen hours or more for the employer. . . .

"The arrangement the employee had with her father with reference to the use of his house was not of such a character to alter the employee's status as a housewife, nor to change a family relationship into a business enterprise."

Upon these specific findings, the appeal tribunal, also the Industrial Commission, concluded that the employee was not customarily self-employed within the meaning of sec. 108.04 (5) (g), Stats., while engaged in the performance of her household duties.

There are further material undisputed facts. The appellant company is engaged in the manufacture of women's hats. In this industry there are two separate periods of in-

dustrial activity, called the spring and fall seasons. In the spring season the manufacture is confined almost exclusively to the fabrication of women's hats made from straw or other braid which is sewn on machines operated by women operators. In the fall the season's hats are made from felt materials which do not require machine-sewing operators. The spring season begins in December and gradually reaches its peak in February or March and ends in April or the fore part of May. It is a highly seasonal industry, and after the close of the spring season there is no work for the sewing operators until the following December. Mrs. Rybacki was a sewing operator and had worked for the appellant during each spring season for the past ten years. She testified:

"Q. So that your sole occupation when not working at Slocum Straw Works is that of housewife, taking care of your child and your home? A. And my home. Yes.

"Q. And did you make any attempt to get other employment during the time you have not been working at the factory? A. No, I haven't, not as long as I have been at Slocum's. I have before that, previous to that, I worked in between at other places, but while I have been at Slocum's that is the only thing I have done—is seasonal work at Slocum's.

"Q. So that during the past nine years, while you have been working at Slocum Straw Works, you have not sought to obtain any other employment? A. No, I have not looked for anything."

During the time she was working she employed a maid to take care of her child, and as soon as she was finished with her seasonal work the maid was laid off.

During the period in question, Mrs. Rybacki's husband conducted a business of his own in which he employed three or four men. Her father, sixty-four years old, owns the home where she and her family live, and is a member of the family, contributing the use of the home for his care and support. The husband pays the bills for the support of the family. Mrs. Rybacki testified she used her earnings for

"extra expenses, clothing, movies and the baby and company and things like that."

Since the facts are not in dispute we have the single question of law whether Mrs. Rybacki is ineligible for unemployment compensation benefits as a person customarily self-employed, or, in other words, what is the meaning of the term "customarily self-employed," as used in the statute? Sec. 108.04 (5) (g), Stats., provides:

"(g) An employee shall not be eligible for benefits from a given employer's account for any given week, if he is customarily self-employed, and there have been not more than twenty weeks in which he worked as much as fifteen hours per week for such employer, and he has worked at his self-employment thirty or more weeks, out of the fifty-two weeks preceding termination of his employment by such employer, and can at such termination reasonably return to his customary (or other similar) self-employment."

While the purpose of unemployment compensation is obvious, the legislature enacted sec. 108.01 (1), (2), and (3), Stats., as a guide to the interpretation and application of ch. 108, Stats. In sub. (1) the policy of the law is thus stated:

"(1) Unemployment in Wisconsin has become an urgent public problem, gravely affecting the health, morals and welfare of the people of this state. The burden of irregular employment now falls directly and with crushing force on the unemployed worker and his family, and results also in an excessive drain on agencies for private charity and for public relief. The decreased and irregular purchasing power of wage earners in turn vitally affects the livelihood of farmers, merchants and manufacturers, results in a decreased demand for their products, and thus tends partially to paralyze the economic life of the entire state. In good times and in bad times, unemployment is a heavy social cost, now paid mainly by wage earners. Industrial and business units in Wisconsin should pay at least a part of this social cost, caused by their own irregular operations. To assure somewhat steadier work and wages to its own employees, a company can reasonably be required to build up a limited reserve

for unemployment, and out of this to pay unemployment benefits to its workers, based on their wages and lengths of service."

The public policy as declared in the foregoing section is to assure steadier work and wages to the employees in Wisconsin industry and business. The lower court, in its construction of the words "customarily self-employed," said:

"We do not believe that it was the intent of the Wisconsin Unemployment Compensation Law to bar a married woman from benefits by virtue of the bare fact of her status as a married woman. That is what this case comes down to, in our analysis of it. What more reason is there to preclude a married woman than a daughter or a sister who similarly is engaged in taking care of a home for her family when she is out of work? If a married woman is to be deprived of these benefits under such circumstances, then what of the reverse situation where the husband may be temporarily unemployed and is doing the chores around the home."

No contention is made in the instant case that the claimant here is barred because she is a married woman. Her married status is not a determining factor. Does she come within the letter or spirit of the law upon the conceded facts? Her employment by appellant company was strictly seasonal. It had been so for the past nine or ten consecutive seasons during which claimant was so employed. Mrs. Rybacki has been married fifteen years. During the past nine or ten years, according to her own testimony, she has had no other employment except that given her by the appellant company for approximately twenty weeks during the so-called spring season. For the remaining thirty-two weeks of each year, she has devoted her whole time and attention to the management and care of her home and family, including the care and attention of her father, who was a member of the family, and who contributed the use of his home to the family in return for his care and keep. Each season Mrs. Rybacki knew almost to a certainty when her employment by appellant company would begin and when it would end. There is

no suggestion in the case that Mrs. Rybacki was obliged to seek employment either for her support or as a contribution to the household expense. The testimony is to the effect that this was amply provided for by her husband.

The respondents contend that the term "self-employed," as used in sec. 108.04 (5) (g), Stats., means an income-producing employment—a monetary return for services. In support of this contention reference is made to a bulletin issued by the Industrial Commission for the benefit of its deputies and field officers in the administration of ch. 108, Stats., the Unemployment Compensation Act, in which bulletin they say with reference to self-employment:

"It is necessary that the expectancy of a profit be present, though it is not necessary that any profit in fact be realized. Practically everyone performs certain services for themselves with the idea of saving money, that is, gardening, house work, cooking, repairing, etc., but such economy measures do not constitute self-employment."

However, in the same bulletin with reference to the "meaning of 'customarily self-employed,' " the bulletin states:

"The term [customarily self-employed] applies to such a variety of situations that an attempt to frame an exact definition would be inadvisable at this time."

Of course, the term "self-employed," as used in the statutes, must be given the same meaning in the administration of the law. Sec. 108.02 (5) (a), Stats., defines "employment," subject to the other provisions of said subsection, as follows:

". . . Any service performed by an individual for pay, including service in interstate commerce, under any contract of service for pay or contract of hire, written or oral, express or implied, whether such individual's contract was directly made with and paid by the employer or through a person in his employ, provided the employer had actual or constructive knowledge of such contract. . . ."

This definition relates to an employer-employee status—to a contract of hire, express or implied. It has no application

to the term "self-employed." The Unemployment Compensation Act applies only where the employer-employee relationship exists. Its declared purpose is to assure steadier work and wages to the employees in industry and business in Wisconsin. When a person becomes self-employed for at least thirty out of fifty-two weeks immediately preceding termination of their employment under the employer-employee relationship, such person is not entitled to the benefits of the Unemployment Compensation Act.

Webster defines the word "employment" as:

"That which engages or occupies; that which consumes time or attention; occupation; office or post of business; service, as agricultural employments; public employment."

And defines the word "employed" as:

"To occupy; busy; devote; concern; as, to employ time in study; to employ one's energies to advantage. To make use of the services of; to have or keep at work; to give employment to; to intrust with some duty; or behest; as, to employ a hundred workmen; to employ an envoy. . . ."

20 C. J. p. 1245, defines "employment" as follows:

"The word is a common one, generally used in relation to the most common pursuits, and therefore ought to be received as understood in common parlance. Although it has been said that the term implies a contract on the part of the employer to hire, and on the part of the employee to perform services, and that until such a contract is mutually entered into, it can have no binding obligation on either party, nevertheless it does not necessarily import an engagement or rendering of service for another, but may refer either to such service, or to a vocation, business, or profession followed or practiced independently. The word is not of the technical language of the law, or of any science or pursuit, and must be construed according to the context and the approved usage of the language. It has been variously defined as the act of attending to the duties and services of another; the act of being employed for one's self, in attending to one's own affairs; the act of hiring; the act of employing or using; agency or service for another or for the public; an agency

for a temporary purpose, which ceases when that purpose is accomplished; the state of being employed; appointment; avocation; business; calling; commission; engagement; occupation; office; profession; service; trade; use; vocation; work; also the object of industry; that which engages the head or hands."

The compound word "self-employed" is not defined in the Unemployment Compensation Act. In *Wadhams Oil Co. v. State,* 210 Wis. 448, 456, 245 N. W. 646, 246 N. W. 687, the court said:

"It is hardly necessary to repeat again what has been so often said by this court that in the construction of statutes the common, ordinary, or approved meaning of words is to be regarded as the one intended unless inconsistent with the manifest legislative purpose."

Monetary gain, or the lack of it, is not an element to be considered in arriving at the meaning of the word "customarily self-employed." However, if a monetary consideration be necessary, we think it is present in the instant case upon the conceded facts. It appears that Mrs. Rybacki's father was a member of the family, that he permitted the family the use of his home in return for his care and keep. There is no evidence to show the reasonable rental value of the father's home, nor to show the reasonable value of the board, room, and services rendered to him. Mrs. Rybacki was the only woman in the household except during the period when she was employed by the appellant company, during which time a maid was employed in the home and paid compensation. It cannot be held that the "self-employment" referred to in the statute must be in connection with a business or enterprise in which the person so employed is a sole proprietor, or that he be a partner or engaged in a joint venture. The respondents argue that a maid employed in household service cannot be, by the very reason of her gainful employment, a relief problem, but they say, however, a housewife performing the same services is in no sense earning

an income that will keep her or those dependent upon her off relief. This argument is not sound. So far as the family unit is concerned, there is a monetary return from the services of the wife which results in a saving of the family income. When Mrs. Rybacki was employed during her regular seasonal employment by the appellant company, a maid was employed in the home. When she was not so employed, the maid was laid off. This case must be determined upon its own peculiar facts. In determining whether Mrs. Rybacki was customarily self-employed for thirty or more weeks during the fifty-two weeks preceding May 8, 1938, we must look to her employment status. For a period of nine or ten years her status did not vary. That is, each year during the spring season of appellant's business she was there employed for not more than twenty weeks. When the season ended she thereafter each year devoted her entire time and attention to her household duties and in caring for her husband, child, and father. Her status is possibly best described in her own words:

"If there is not work at Slocum Straw Works then I am home and that is what I prefer to do, rather than to attempt to get work elsewhere."

Upon the findings made in this case, as well as upon the conceded facts not covered by the findings, we must hold that Mrs. Rybacki was ineligible for unemployment compensation benefits. The judgment of the lower court must be reversed with directions to dismiss her application.

*By the Court.*—Judgment reversed, and record remanded with directions to dismiss the application for unemployment benefits.