266 P.2d 1027

Claim of SAPP.

No. 8011.

Supreme Court of Idaho.

Feb. 10, 1954.

Carver, McClenahan & Greenfield, Frank E. Chalfant, Jr., Boise, for appellant.

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

## THOMAS, Justice.

Appellant, hereinafter referred to as claimant, had, since the fall of 1943, lived in Idaho, apparently within the Boise area, and his usual employment consisted of operating trucks, cabs, busses and other motor vehicles and construction work, all of which were somewhat seasonal.

In the month of November, 1952, claimant was unemployed through no fault of his own; in December he left Boise and went directly to Shelbyville, Illinois, a city of approximately 4500 population, where his aged mother lived; he arrived there December 6, 1952. He remained in Shelbyville until the 25th of January and on that day went to Chicago for a period of four days, then returned to Boise, Idaho, arriving here on the 30th of January, 1953.

Upon arrival in Shelbyville claimant registered with the unemployment office and made weekly reports to the itinerant crew which forwarded the reports to the office in Decatur, Illinois, which in turn forwarded them to the Boise office for the five-week period ending January 3, 1953. Benefit payments were made to him for this five-week period which the Agency now contends should be refunded because claimant was ineligible for benefit payments during the whole of this period; moreover, claimant was denied payments for the weeks ending January 10 and January 17, 1953, on the ground that he, without good cause, filed the claims too late.

Originally, claimant was given a hearing before the Appeals Examiner of the Employment Security Agency of the State of Idaho. From the decision of the Appeals Examiner, denying payments for the weeks ending January 10th and 17th and ordering refund of the payments made for the five-week period, he appealed to the Industrial Accident Board which adopted as its own the findings of fact made by the Appeals Examiner and, by order, affirmed his decision. It is from this order that claimant has appealed.

This case arises under and is controlled by the Employment Security Law, T. 72, Ch. 13, I.C., particularly Sections 72–1366 (e), 72–1368(m) and 72–1369(a).

When claimant appeared before the Claims Interviewer on February 5, 1953, he prepared and signed a Pre-Interview Report, Agency's Exhibit No. 1, wherein he stated, among other things, that he had just returned from visiting his mother.

During the course of the hearing, both before the Appeals Examiner and the Board, it developed that claimant had upon his arrival in Shelbyville contacted the un-

employment office and, as required by the Act, made weekly reports upon forms furnished by that office during the entire time he remained there; however he did not secure employment; he contacted two cab companies, spoke to the head of a business college about employment without success, made inquiry at an implement factory and contacted several farmers whose names he could not recall, all without avail; on or about the 25th of January, 1953, he went to Chicago where he spent four days, going there principally to apply for work with the American Friends Service Committee, either within or without the United States; here again he was unsuccessful in getting such employment and, as stated above, he then returned to Boise, Idaho. He testified that in the month of December, 1949, again in December, 1951, and again in December, 1952, he went to Shelbyville in the interest of his mother's welfare, as well as for personal reasons, and to seek employment. It developed that when he went there in December, 1949, he had the thought in mind that he would remain and make his home there and on this occasion he stayed until the following June; that when he went there in December, 1951, he remained for a period of some five months and that during both periods, which approximated eleven months, he worked one week in Chicago as a carpenter's helper and on the other occasion for approximately three and one-half weeks for the Chicago Union Station; on the last occasion he remained for approximately seven weeks and was unemployed during the entire stay; with reference to the inquiry as to why he was unable to get employment in Shelbyville, he testified the town was typically the kind of town that is frozen up in the winter time as far as work is concerned, and there just wasn't anything there except a few part-time jobs which were given to the students of a local business college.

Under the provisions of Section 72-1366, I.C., one is eligible for benefit payments by meeting the specific requirements of this section; subdivision (e) thereof provides that to entitle one to receive the benefits of the Act while unemployed through no fault of his own he must be able to work, available for suitable work and seeking work.

There is no contention in this record that claimant was not able to work nor that he was not seeking work although it is contended that he was not available for work because he was not attached to a labor market. If claimant had not met this requirement of the Act then he was not entitled to benefit payments received for the five-week period nor would he be entitled to receive benefits for the two-week period from January 3rd to 10th and from January 10th to 17th.

■ The burden is upon claimant to prove that he has met the requirements and conditions of eligibility for benefit pay-

ments including, of course, that he was available for suitable work. Talley v. Unemployment Compensation Division, etc., 63 Idaho 644, 124 P.2d 784; Huiet v. Schwob Mfg. Co., 196 Ga. 855, 27 S.E.2d 743; Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 183 S.W.2d 77; Hunter v. Miller, 148 Neb. 402, 27 N.W.2d 638; Loew's, Inc. v. California Employment Stab. Comm., 76 Cal.App.2d 231, 172 P.2d 938.

We now will consider the crucial point in connection with this appeal, that is, what is the import and meaning of the words "available for suitable work". Our Act, which is also true with reference to Acts of other jurisdictions, sets forth a declaration of public policy to the effect that involuntary unemployment is a subject of interest and concern of each and every state and of the national government, and that it requires some suitable and appropriate action to prevent the spread of unemployment and to lighten the burden which exists and so often falls with devastating force upon one so unemployed and upon his family to the detriment of society. Section 72–1302, I. C.

While, as above noted, our Act requires, among other things, that one must be available for suitable work in order to be eligible for benefit payments where he is unemployed through no fault of his own, the phrase "available for suitable work" is not defined in the Act. At no previous time has this court been called upon, under such facts as herein developed, to construe or interpret its meaning. This phrase is somewhat similar to or in the exact language employed in the respective compensation laws in all American jurisdictions and has been considered and treated rather thoroughly in some courts of last resort.

An examination of the cases from many jurisdictions justifies the conclusion that no hard and fast rule as to what constitutes availability for work should be or perhaps could be adopted; it must depend, at least in part, upon the particular facts and circumstances as developed in each case; as a general proposition, the availability requirements of the statute are met in instances where the worker is able, ready and willing to accept and is seeking suitable work at a point where an available labor market exists. Mohler v. Department of Labor, 409 Ill. 79, 97 N.E.2d 762, 24 A.L.R. 2d 1393; Leonard v. Unemployment Compensation Board of Review, 148 Ohio St. 419, 75 N.E.2d 567; Kontner v. Unemployment Compensation Board of Review, 148 Ohio St. 614, 76 N.E.2d 611; Boyer v. Board of Review, 4 N.J.Super. 143, 66 A.2d 543; Hunter v. Miller, 148 Neb. 402, 27 N. W.2d 638; Shellhammer v. Unemployment Comp. Board of Review, 162 Pa.Super. 327, 57 A.2d 439; Dwyer v. Appeal Board, 321 Mich. 178, 32 N.W.2d 434. See also Claim of Jackson, 68 Idaho 360, 195 P.2d 344; Stricklin v. Annunzio, 413 Ill. 324, 109 N.E. 2d 183; Walton v. Wilhelm, 120 Ind.App. 218, 91 N.E.2d 373; Schettino v. Adminis-

trator, Unemployment Comp. Act, 138 Conn. 253, 83 A.2d 217; Kentucky Unemp. Ins. Comm. v. Henry Fischer Pack. Co., Ky., 259 S.W.2d 436; Maney v. Unemployment Comp. Act (Conn.), Vol. 2, CCH Unemp. Ins.Rep., Sec. 8336; Biscontini v. Board of Review (Ill.) Vol. 3, CCH Unemp. Ins. Rep., Sec. 8469; Waters v. Department of Labor (Ill.), Vol. 3, CCH Unemp. Ins. Rep., Sec. 8340; Reener v. Board of Review (Ill.), Vol. 3, CCH Unemp. Ins. Rep., Sec. 8368; Murphy v. Komaiko (Ill.), Vol. 3, CCH Unemp. Ins. Rep., Sec. 8462. See also 81 C.J.S., Social Security and Public Welfare, § 203, p. 301.

In none of the cases which we have examined do the courts hold that merely registering with and making weekly reports to the employment office, expressing a desire to work, and even fortifying these requirements by seeking work, necessarily establish availability for work.

■ While in the present case claimant has shown that he was able and willing to work and was seeking employment, yet by his own testimony as above set forth he went to a much smaller city than Boise where he had every reason to believe from his past experience and familiarity with the labor conditions of the locality that few job opportunities existed and employment prospects were extremely limited. He chose to detach himself from whatever opportunities there might have been in the Boise area and moved to another locality where labor opportunities as far as he was concerned were nonexistent; he went to Shelbyville in December of three different years, including the one in question, and during the time he remained there, which aggregated approximately eleven months, he was employed for approximately four weeks. None of this employment was had in Shelbyville but in Chicago, some 193 miles distant; when all the facts and circumstances as developed in the record are carefully considered and weighed it cannot be said that claimant was available for work within the spirit and meaning of the Act. The evidence, moreover, discloses a pattern indicative of a mental attitude to move into and remain in a locality out of the labor market during the slow season of employment in the Boise area, with little or no expectation of getting any employment although, as the record discloses, he would have accepted any suitable employment.

■ To hold that claimant was not available for suitable work within the meaning of the Act is not contrary to but in harmony with the declared purposes thereof. While it clearly is the intent of the Act to provide benefits for those who are unemployed due to no fault of their own and who are willing, able and ready to work, and who are seeking work, yet such persons may meet all of these requirements and still not be eligible for compensation if they are not available for suitable work; in order to be so available such persons must be genuinely attached to a labor mar-

ket. The ultimate in the results required may never be acquired under the Act and no doubt many persons have and will continue to benefit thereunder who are not deserving, yet the courts must bear in mind the worthy objectives intended and, in construing the Act, must also keep such in mind. In the instant case, the history of the work record of claimant reveals that the work he has fitted himself for and which he is generally engaged in doing is somewhat seasonal but this without more would not make him ineligible for receiving benefit payments when he is unemployed through no fault of his own; on the other hand, when the unemployment continues during the off-season by voluntary detachment from the labor market, he is not available for suitable work.

We do not base our holding that claimant was not available for suitable work on the ground that he went to Shelbyville to visit his mother and in the interests of her welfare, as well as for personal reasons; it is possible that he could have entertained these objectives and at the same time be available for work; we do not hold that it was necessary for him to remain at or near his residence to satisfy the availability requirements; we simply hold that under the particular facts adduced in this specific case by claimant he detached himself from the labor market and has shown as a matter of fact that he was not available for suitable work under the statute. It follows that he was not entitled to receive the bene-fit payments made for the five-week period nor is he eligible to receive the payments for the week ending January 10, 1953, and the week ending January 17, 1953.

Finally, it must be determined whether or not claimant must refund the benefit payments received for the first five weeks or that such payments be deducted from any future payments which should be payable to him under the Act. This the order appealed from requires.

The applicable statute, Section 72–1368 (m), I.C., imposes a liability upon claimant, who by reason of nondisclosure or misrepresentation by him or by another of a material fact (whether or not such nondisclosure or misrepresentation was fraudulent), to repay the Employment Security Agency a sum equal to the amount so received by him.

It is urged by the Agency that claimant upon the form furnished him for reporting purposes stated that he was available for work; that this is not true and hence such statement is necessarily a misrepresentation of a material fact; consequently the Agency urges on the strength of this record that claimant is liable either to have such sums so paid deducted from future benefits payable to him or to repay to the Agency for the benefit of the unemployment fund an amount equal to the sums received by him.

On the form furnished, claimant was asked, among other things, the following

question: "Were you available for full-time work?" He could answer "Yes" by placing a check mark in a square opposite the word "Yes" or he could answer "No" by checking the square opposite the word "No". Under the instructions set forth in the form, if his answer was in the negative he was required to give a complete explanation on the reverse side of the form; if his answer was in the affirmative then no explanation was required.

The affirmative answer of claimant upon the form furnished him that he was available for full-time work constitutes a statement of an ultimate element of his claim, the determination of the existence of which was necessary if the claim was to be allowed. In the preparation of this particular claim, claimant fully and honestly reported all the pertinent facts required of him. There was no misrepresentation or nondisclosure of any material fact; for each week involved he certified that he was unemployed, that he was able to work, available for work and seeking work, and that he had refused no suitable work offered to him nor did he fail to apply for suitable work. When he certified that he was available for work he was asserting a conclusion and hence was not failing to disclose or misrepresenting a material fact. Loudon v. A. & M. Karagheusian, Inc., 23 N.J.Super. 309, 93 A.2d 30; Wagner v. Unemployment Compensation Comm., 355 Mo. 805, 198 S.W.2d 342.

The Industrial Accident Board, in a case reported in Vol. 3, CCH Unemp.Ins.Rep., Sec. 8173.30 (Idaho), under a state of facts much stronger factually in support of restitution than the instant case could possibly be, held that the claimant, having filed her initial claim in good faith and having received the benefit payments likewise in good faith, even though the benefit payments made to her were erroneously paid, was not required to refund such payments. There, of course, the commission was construing Section 72–1369, I.C., which in substance provides that a person who has received benefit payments to which he was not entitled under the law is not liable to repay them if it is determined that the claim was made in good faith, that the benefits were received in good faith and that the claim was made and benefits received at a time when such person was unemployed. There the Board, even though claimant had left her work without good cause and had since been unavailable for work, held she could retain the benefit payments because her initial claim for benefits had been made in good faith and the benefits so paid her had been received in good faith.

From what has heretofore been stated it follows that the order of the Board denying compensation to claimant for the week ending January 10th and for the week ending January 17th is affirmed on the ground and for the reason that claimant was not available for work during this period. The

order of the Board requiring claimant to refund the benefit payments received for the five-week period, that is, the weeks ending December 6, 13, 20, 27, 1952 and January 3, 1953, or that such payments be deducted from any future benefit payments to him, is reversed.

Costs to appellant.

PORTER, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.