313 P.2d 1067

**Ivan E. HATCH, Claimant-Appellant,**

v.

**EMPLOYMENT SECURITY AGENCY,**
**Respondent.**

No. 8494.

Supreme Court of Idaho.

July 23, 1957.

Stephen Bistline, Sandpoint, for appellant.

Graydon W. Smith, Atty. Gen., and John W. Gunn, Asst. Atty. Gen., for respondent.

TAYLOR, Justice.

Claimant (appellant) a carpenter, was last employed by Albeni Contractors. This employment terminated August 31, 1954, by reason of the completion of the project. He filed claim for unemployment benefits with effective date of September 5, 1954, and was thereafter paid benefits to and including April 23, 1955, excluding a short re-employment interval and a vacation period, in total amount of $625.

In 1947 claimant took up residence in Sandpoint. He purchased two lots and upon these lots he and his family lived in a tent for two months, during which time he built a garage on the property. The family lived in the garage for five years.

Prior to the acquisition of this property, Hatch had rented the dwelling place of his family. Further reciting the facts, the board found:

"In June, 1952, Hatch commenced constructing a dwelling on the lots. This work he did in his spare time. A skilled craftsman, he did most of the work himself, with occasional assistance from his wife. Particularly specified in the testimony, he did the carpentry, laid the brick and did the plumbing and electrical work. He did not lay the linoleum.

"After his lay-off by the Albeni Constructors and during all the time he was drawing benefits, Hatch worked steadily, eight hours a day and more, completing the construction of the house. While he says he was looking for work and would have suspended his house building if offered work, he made no active search on his own behalf. He did investigate a couple of possibilities, one at Moscow and another at Hope, suggested to him by the Agency. He testified:

" 'I was looking for work but I wanted to work here in Sandpoint, so that I could put in my spare time on the house.'

"About April 15, 1955, two months before the final finishing of the house was completed, Hatch decided to sell

the house, pricing it at $16,500. He had a mortgage on it of $9,000.

"In the last week of April, just when he was about to start sanding the floors, he found a job, which turned out to be a steady one. He returned the sander which he was renting.

"At no time during the benefit series did the claimant refer to or make any indication that he was building a home.

"On each week for which he claimed benefits, he certified that he performed no work and earned no wages during the week except as reported. He was still working on the house in his spare time on May 2, when he signed his last pay order."

The rulings of the appeals examiner which were approved by the board are as follows:

"There is no question with respect to the claimant's activities regarding his building his house. It is immaterial whether the house was being built for his own use or for sale. He was fully engaged in its construction. There was an intrinsic value to the labor being performed since it was a saving to him for labor costs and the type of work added to the value of the home.

"The withholding from the local office the information that he was build-

ing a house, although not considered to be a deliberate or willful act committed for the purpose of collecting benefits, was nevertheless information of such a nature that it should have been divulged to the office in order that his status might be cleared. As he was fully engaged in a self-employed endeavor, he was not eligible to receive the benefits obtained and they are refundable to the Employment Security fund."

The pertinent provisions of the statutes are as follows:

"The personal eligibility conditions of a benefit claimant are that—

\*   \*   \*   \*   \*   \*

"(e) During the whole of any week with respect to which he claims benefits or credit to his waiting period he was able to work, available for suitable work, and seeking work; \* \* \*." § 72–1366, I.C.

"Claims for benefits shall be made in accordance with such rules and regulations as the director may prescribe.

\*   \*   \*   \*   \*   \*

"(m) Any person who, by reason of non-disclosure or misrepresentation by him or by another of a material fact (irrespective of whether such non-disclosure or misrepresentation was fraudulent), has received any sum as

benefits under this act to which he was not entitled shall, at the discretion of the director, be liable to repay such sum to the director for the employment security fund. * * *" § 72-1368, I.C.

The only definition of "unemployment" contained in the employment security law, is that contained in § 72-1312, I.C., defining "compensable week" as follows:

"(a) A week of unemployment with respect to which an eligible benefit claimant shall be entitled to benefits shall be known as a compensable week; * * *

"(b) A compensable week of a benefit claimant shall be a week of either no work or less than full-time work."

In this case there is no issue involving "less than full-time work." The appellant testified he was fully employed in the construction of his house, working more than eight hours per day, during the time he was receiving the unemployment benefits.

"(a) The term 'wages' means all remuneration for personal services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. * * *" § 72-1328, I.C.

It is generally held that one who is self-employed is not unemployed. 4 CCH Unemployment Ins.Rep. (Mass.) 1901.618, p. 24,159; 6 CCH Unemp.Ins.Rep. (Ore.) 1901.02, p. 40,102; Commonwealth v. Montgomery (Pa.Ct. of Quarter Sessions) 7 CCH Unemp.Ins.Rep., par. 8631, p. 41,802; 8 CCH Unemp.Ins.Rep. (W.Va) 1901.045, p. 51,148; Muchant v. Unemployment Compensation Board of Rev., 175 Pa.Super. 85, 103 A.2d 438; Barlow v. Unemployment Compensation Board of Rev., 178 Pa.Super. 278, 115 A.2d 883; Kapera v. Unemployment Compensation Board of Rev., 178 Pa.Super. 508, 116 A.2d 238; Kespelher v. Unemployment Compensation Board of Rev., 178 Pa.Super. 511, 116 A.2d 239; Aley v. Unemployment Compensation Board of Rev., 178 Pa.Super. 515, 116 A.2d 241; Claim of Emery, 281 App.Div. 426, 120 N.Y.S.2d 142; Slocum Straw Works v. Industrial Commission, 232 Wis. 71, 286 N.W. 593; Phillips v. Michigan Unemployment Compensation Comm., (Mich.) 35 N.W.2d 237.

"A claimant who worked eight or more hours a day in the construction of a residence on his own lot, was held not to be unemployed when the local market value of his class of work was not less than 50 cents an hour, and the work he was doing on his house could not have been performed if he were employed full-time." Referees Decision, 6 CCH Unemployment Ins.Rep. (Ore.) 1901.02, p. 40,102.

"A carpenter by trade who was working full time on the construction of a house for himself and his family was held to be self-employed and ineligible for benefits." Appeal Tribunal Decision, No. AT-581, 8 CCH Unemployment Ins.Rep. (W.Va.) 1901.-045, p. 51,148.

In Muchant v. Unemployment Compensation Board of Rev., 175 Pa.Super. 85, 103 A.2d 438, 440, the Pennsylvania court was considering the claim of a miner, who, during his lay-off period, was engaged in a farming operation on a farm, owned by members of his family, where he resided, rent free. He maintained eight head of beef cattle and two sheep and cultivated approximately fifty acres for producing feed for the cattle and sheep. While engaged at the mine he performed only "necessary" work on the farm. During the lay-off period he devoted full time to its operation. The court said:

"The claimant admittedly had a relatively large farm which he personally worked during the period in question. The fact that he received no remuneration therefor during that time does not remove him from the purview of the above definition of 'unemployed.' The efforts expended in those weeks may well contribute to his receipt of remuneration in the form of future profits from his farming enterprise. It cannot be said that such services are of a type with respect to which no remuneration is payable. * * *

"We have no doubt that claimant was available for recall to the mines at all times during the lay-off period. But the fact remains that he operated his farm during this interval, and therefore he was not unemployed while awaiting the call for the basic reason that one who is self-employed is not unemployed."

The Pennsylvania statute, defining unemployment, as set out in that case, is much more favorable to the claimant than our § 72–1312, I.C. It provides in effect that an individual shall be deemed unemployed in any week "(i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, * * *." 43 P.S. § 753(u). In contrast our definition characterizes it as a week of "no work or less than full-time work."

The Pennsylvania court applied the same rule denying benefits to claimant who engaged in farm work during spare time and lay-off periods in Kapera v. Unemployment Compensation Board of Rev., 178 Pa. Super. 508, 116 A.2d 238. Claimant urged that the farm employment was not substantial or sufficient for a livelihood. The court said:

"That appellant is engaged in a farming operation for his own benefit

and with the hope of eventually realizing a profit therefrom is evident from his testimony. Since appellant assumed the risk of profit or loss, he cannot now look to the unemployment compensation fund to subsidize his business venture merely because he is not required to devote all of his time and effort to the farm work." 116 A.2d at page 239.

In the case of another part-time farmer, Kespelher v. Unemployment Compensation Board of Rev., 178 Pa.Super. 511, 116 A.2d 239, 241, the court observed that claimant "was engaged in an activity sufficiently substantial in nature to constitute 'employment' ". See also, Aley v. Unemployment Compensation Board of Rev., 178 Pa.Super. 515, 116 A.2d 241.

In Slocum Straw Works v. Industrial Commission, 232 Wis. 71, 286 N.W. 593, 597, the claimant, a sewing operator, seasonally employed in a factory, did not actively seek other employment during the lay-off period. Instead she did housework, taking care of her home and family. Reciting the facts further, the court said:

"It appears that Mrs. Rybacki's father was a member of the family, that he permitted the family the use of his home in return for his care and keep. There is no evidence to show the reasonable rental value of the father's home nor to show the reasonable value of the board, room and services rendered to him. Mrs. Rybacki was the only woman in the household except during the period when she was employed by the appellant company, during which time a maid was employed in the home and paid compensation. * * * The respondents argue that a maid employed in household service cannot be, by the very reason of her gainful employment, a relief problem, but they say, however, a housewife performing the same services is in no sense earning an income that will keep her or those dependent upon her off relief. This argument is not sound. So far as the family unit is concerned, there is a monetary return from the services of the wife which results in a saving of the family income." 286 N.W. at page 598.

In Phillips v. Michigan Unemployment Comp. Comm., 323 Mich. 188, 35 N.W.2d 237, the court was concerned with the claim of an attorney customarily employed in a manufacturing plant, who engaged in the practice of law after being laid off at the plant. The court held that persons engaged in types of employment which are not "covered employment" under the terms of the act, § 72–1316, I.C., are not "unemployed". The fact that his income from the practice was so small that he could qualify for benefits as "totally unemployed" did not establish his eligibility. The court said:

"Remuneration earned, not remuneration received, is the test under this section. Efforts expended in those weeks may well have earned fees paid at a subsequent date, a thing not at all unusual in a law practice." 35 N.W.2d at page 239.

The same rule was applied in Claim of Emery, 281 App.Div. 426, 120 N.W.2d 142. A mill employee, during a lay-off period, devoted substantially full time in a retail liquor store, of which he was part owner. It was held immaterial whether his earnings at the store were within the minimum which would otherwise entitle him to benefits. He was not denied benefits because he was not available for other employment. It was held he was not unemployed within the meaning of the law.

In Barlow v. Unemployment Compensation Board of Rev., 178 Pa.Super. 278, 115 A.2d 883, claimants, both miners, when laid off, devoted full time to the development of an independent mining project, during time when there was no other work available to them. It was held that they were self-employed and ineligible for benefits. They received no returns from their activity. Their remuneration lay in the hope of future profit, should they develop salable coal by their efforts.

In Commonwealth v. Montgomery, Pennsylvania Court of Quarter Sessions, 7 CCH Unemployment Ins.Rep. (Pa.) Par. 8631, p. 41,802, the claimant had been devoting spare time to the building of a garage for car storage. When laid off he devoted full time to the construction work; and later decided to use the building for repair and inspection service. The court held the fact that he received no weekly income from his activity did not make him eligible for unemployment benefits.

■ In this case, Hatch, through his spare time efforts while employed, and his full time work while he claimed he was unemployed, acquired an equity in his home property equal to at least a major part of the $7,500 difference between the value he placed upon the house of $16,500 and the mortgage encumbrance of $9,000. A substantial part of this sum of money must be regarded as remuneration for the work he did while not otherwise employed. If he sold the house he would receive that remuneration in cash. If he did not sell the house he would receive his remuneration in the value of the use of the house as a dwelling for his family. It would come to him in the form of rent saved.

This is not a case of an unemployed person doing odd jobs or making minor improvements or repairs on his home while otherwise unemployed. This is a case of a skilled artisan pursuing his skill, and engaging in work of his craft during an extended period in the construction of a permanent and valuable improvement for himself. The construction of this modern

Norman brick, three bedroom, two bathroom, home, was a major project. It resulted in an increment to the value of his estate equal to, if not greater than, the wages he would have been required to pay to other artisans to do the work for him, which he did for himself. Thus, he was fully employed within the meaning of § 72–1312, I.C., and received actual and prospective wages or remuneration within the meaning of § 72–1328, I.C. Therefore, he was not unemployed within the meaning of the employment security law, and was not entitled to the benefits which he received.

Appellant cites only two cases to support his contention that he was unemployed during the time he received the benefits. Todd Shipyards Corp. v. Texas Employment Comm., Tex.Civ.App., 245 S.W.2d 371; Martin v. Unemployment Compensation Board of Rev., 174 Pa.Super. 412, 101 A.2d 421. The Texas case supports appellant in its construction of the statute defining "totally unemployed", Vernon's Ann.Civ.St. art. 5221b–17(l). The Texas statute is similar in that respect to that of Pennsylvania, which, as we have observed, is more favorable to the appellant than our § 72–1312, I.C. The Texas ruling is therefore not a parallel precedent. Moreover, it construes the statute defining "totally unemployed" contrary to the construction given substantially the same provision by the Pennsylvania court in the cases above cited. The construction

is also contrary to the rule applied in the Michigan, New York, and Wisconsin cases cited above.

In the Pennsylvania case, Martin v. Unemployment Compensation Board of Rev. supra, the court accepted and applied the statutory definition of "covered employment" as a definition of "employment", and, we think erroneously, concluded that one engaged in employment which was not "covered employment" was unemployed and entitled to benefits. This case, while not expressly overruled in the later Pennsylvania cases which we have cited, is in those later cases completely repudiated. The Michigan court likewise rejected this contention in Phillips v. Michigan Unemployment Comp. Comm., supra.

■ Regarding the order requiring repayment, we note the statute leaves such requirement in the discretion of the director. § 72–1368(m), I.C.

In Claim of Sapp, 75 Idaho 65, 266 P.2d 1027, we held under § 72–1369, I.C., that one who made claim for benefits in good faith, received such benefits in good faith, and was unemployed at the time, was not required to repay the benefits to the fund, even though it was afterward determined that he had not been entitled to the benefits received.

Here the agency and the board found, in effect, that claimant claimed and received the benefits in good faith. It follows that he made the claims and re-

ceived the benefits believing that he was unemployed within the meaning of the law. However, under § 72–1368(m) the non-disclosure need not be fraudulent, and in the discretion of the director, claimant became liable for repayment. That discretion is vested in the director, not in this court.

The order is affirmed. No costs allowed. § 72–1375(b), I.C.

KEETON, C. J., and SMITH, J., concur.

McQUADE, J., with whom PORTER, J., concurs, dissenting:

The only point involved in this case is whether or not the claimant was employed during the time he was making claims for unemployment compensation. Under the theory of the majority, any work done in the preservation or increasing of the value of the home of the claimant would disqualify him from receiving the benefits due under the law. The basic purpose of this social legislation has been set out in I.C. sec. 72–1302:

"(a) As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a sub-ject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own. * * *"

It has been held that the principal objective of this legislation was to encourage employers to make plans whereby there would be more stable employment; and as an additional objective, this legislation was to prevent economic insecurity for the individual workman and his family. Both of these objectives working together advance

the general economy of the country and prevent mass unemployment from the chain-reaction type of national unemployment that comes about by a few basic industries' laying off their personnel.

In the case at hand, the complete shut-down of employment by the Albeni contractors by the completion of the Albeni Falls Dam and the Washington Water Power Dam threw all the carpenters employed thereon out of employment. There was a finding by the examiner to the effect that thereafter the claimant did perform some work for which he drew no unemployment compensation for a short period.

The effect of this ruling is to make a man sit idle and do absolutely nothing when there is no labor market for his labor. It seems apparent from the briefs that no carpentry work was available under any circumstances in and around Sandpoint, Idaho, where the claimant resided. Under these circumstances, there should be a liberal interpretation of the statute as to what employment is, in accordance with the ruling of this court in Hagadone v. Kirkpatrick, 66 Idaho 55, 154 P.2d 181; dissenting opinion, In re Gem State Academy Bakery, 70 Idaho 531, 224 P.2d 529; In re Potlatch Forests, 72 Idaho 291, 240 P.2d 242. There is no finding that work of the character which the claimant was capable of performing was available in and around the area of Sandpoint, Idaho, in accordance with Hagadone v. Kirkpatrick, supra; Wolfgram v. Employment Security Agency, 75 Idaho 389, 272 P.2d 699; dissenting opinion, Devlin v. Ennis, 77 Idaho 342, 292 P.2d 469, 476. In the case of Devlin v. Ennis, supra, Justice Smith said:

"Both the workmen's compensation law and the decisions of this Court admonish the Industrial Accident Board to make inquiries and investigations as shall be deemed necessary. * * *"

The claimant herein was living in a community which had the same characteristics as an area wherein there was seasonal unemployment, in that there was no employment available in the carpentry trade. Merely because the claimant occupied himself in repairing, building, or adding to the value of his home, he is now disqualified from receiving the benefits of financial assistance which was designed for this particular set of facts: i. e., gross unemployment.

The cases which have been cited in the majority opinion, wherein full time employment on a house means self-employment, are only extracts of cases that are not capable of being persuasive to this Court in that the decisions are apparently those of administrative boards. These decisions, in Volumes 6 and 8 of Commerce Clearing House under paragraph 1901 of Unemployment Compensation, do not recite the particular facts upon which the

decisions are based, and should not therefore be used by this Court as the basis of the majority opinion.

The order of the Industrial Accident Board should be reversed.