83 N.J. Super. 449 (1964)
200 A.2d 351
DOMENICK R. PEDALINO, CLAIMANT-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1964.
Decided May 11, 1964.
*450 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Conrad N. Koch argued the cause for appellant.
Mr. Edward A. Kaplan argued the cause for respondent.
The opinion of the court was delivered by FOLEY, J.A.D.
Claimant appeals from a decision of the Board of Review (Board), Division of Employment Security (Division), Department of Labor and Industry, declaring him ineligible for unemployment compensation and directing the repayment of certain benefits which he has received.
Claimant was employed by the DeLuxe Reading Corp. as a quality production manager at a weekly salary of $140. On December 8, 1961 he was separated from employment because of lack of work. He filed a claim for unemployment benefits on December 11, 1961, which was honored.
On February 25, 1962, while he was receiving such benefits, he purchased a franchise for the operation of a car rental agency for $3,000. On March 1, 1962 he commenced doing business under the trade name Econo-car Rental System. At that time his wife assisted him in the operation of the business and he had no employees. He rented two offices in Lyndhurst, New Jersey, one of them at 609 Ridge Road. He received all of the commissions derived from the business and paid all expenses, including rent, telephone, telephone answering service, utilities and advertising.
On April 13, 1962 he hired one employee to work for him full time. The employee's principal duties were to answer the telephone and arrange for the rental of automobiles. This employee was discharged on June 1, 1962. Thereafter, claimant conducted the business without help until the latter part *451 of November 1962 when he hired another full-time employee. On June 17, 1963, the date of the hearing before the Board, he was still engaged in the car rental business.
Upon filing the claim for unemployment benefits, and at each reporting date thereafter, claimant represented and certified to the Division that he was unemployed, able to work, available for work, and seeking full-time employment. In reliance upon these representations the Division paid him unemployment benefits for 19 weeks ending April 15, 1962. Benefits for subsequent weeks were withheld.
Claimant did not disclose to the Division that he had entered the car rental business. He represented to the Division that he was not in business for himself, but that his wife had opened a car rental office at 609 Ridge Road, Lyndhurst.
On November 30, 1962 a representative of the Division determined, pursuant to N.J.S.A. 43:21-16(d), that claimant was ineligible for benefits from March 1, 1962 because as of that date he became the sole owner and operator of a car rental business. Demand was then made by the Division for a refund of the benefits paid to him.
Claimant appealed to the Appeal Tribunal of the Division which, after a hearing, found him ineligible for benefits and liable to repay all benefits he had received. See N.J.S.A. 43:21-4(c). He then appealed to the Board which affirmed claimant's liability for the repayment of the benefits above set forth.
Claimant's contention is that he was entitled to benefits under N.J.S.A. 43:21-4(c), which provides eligibility if a claimant "is able to work, is available for work, and has demonstrated that he is actively seeking work * * *." He maintains that if these requirements were met it was of no significance that he coincidentally owned and operated a car rental business.
The Board, on the other hand, argues that upon the commencement of the car rental business claimant removed himself from the labor market and consequently became ineligible for unemployment compensation benefits.
*452 The issue thus raised appears not to have been previously the subject of a reported decision in this State. However, in the jurisdictions in which comparable problems have been considered the predominant view is that where one actively enters a business venture he is deprived of unemployment compensation benefits, whether or not the business returns a profit.
In Barlow v. Unemployment Compensation Board of Review, 178 P. Super. 278, 115 A.2d 883 (Super. Ct. 1955), where two miners formed an independent mining operation shortly after they were laid off from their previous jobs and for the next several months spent considerable time and money developing their mine, they were denied unemployment compensation although the mining operations were unsuccessful. There the court said:
"The claimants were devoting their time and efforts during the weeks in question to the performance of essential preliminary work in connection with a mining operation of sizeable proportions, from which they hoped eventually to produce and sell sufficient coal to earn a livelihood for themselves and their families. They will be remunerated for their present efforts from the sale of any coal they may be able to obtain in the future. They were engaged in business for themselves, on a partnership basis, during the period in question, to the same extent as persons operating stores, service stations, garages and farms. They cannot expect the unemployment compensation fund to subsidize their business venture merely because it failed to show an immediate profit.
* * * In so doing, they assumed the risk of profit or loss and placed themselves in the same category as any other persons engaged in business for themselves. Consequently, they do not come within the category of unemployed persons whom the Act was primarily designed to protect and are therefore outside the scope of the benefit provisions of the Act." (115 A.2d, at p. 884)
On this point the New York courts have ruled:
"One who is `self-employed' is not `unemployed' * * * Self-employment is clearly work for profit; one who is self-employed is engaged in employment * * * and he cannot claim any unemployment insurance benefits." Claim of Emery, 281 App. Div. 426, 120 N.Y.S.2d 142, 143-144 (App. Div. 1953).
*453 In Aley v. Unemployment Compensation Board of Review, 178 Pa. Super. 515, 116 A.2d 241 (Super. Ct. 1955), the claimant and his wife bought and operated an appliance store for the two years subsequent to his layoff. The claimant testified that he suffered a loss in the first year, and he anticipated no profit for the second. The court in denying relief observed that the absence of weekly profits does not make a claimant eligible for unemployment compensation benefits.
New York has rejected the argument that the self-employed activity must be profitable before unemployment benefits may be withheld:
"We do not, however, construe such language [the statute] to require that the activity result in an immediate monetary reward. It is enough that the activity engaged in is a business venture designed to produce an eventual profit. Surely whether the self-employed's venture is a success or a failure should not be the test of his employment status." In re Bailey's Claim, 18 App. Div.2d 727, 234 N.Y.S.2d 300, 302 (App. Div. 1962).
See also Phillips v. Michigan Unemployment Compensation Commission, 323 Mich. 188, 35 N.W.2d 237 (Sup. Ct. 1948); Slocum Straw Works v. Industrial Commission, 232 Wis. 71, 286 N.W. 593 (Sup. Ct. 1939); Hatch v. Employment Security Agency, 79 Idaho 246, 313 P.2d 1067, 65 A.L.R.2d 1174 (Sup. Ct. 1957); Kapera v. Unemployment Compensation Board of Review, 178 Pa. Super. 508, 116 A.2d 238 (Super. Ct. 1955); Claim of Schreiber, 5 App. Div.2d 745, 168 N.Y.S.2d 818, 819 (App. Div. 1957). But compare Johnson v. Board of Review of Industrial Commission, 7 Utah 2d 113, 320 P.2d 315 (Sup. Ct. 1958).
The majority views above expressed accord with the declaration of public policy contained in R.S. 43:21-2:
"As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread *454 and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state requires the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment."
The Board in its decision held:
"The claimant filed claims certifying he was unemployed, able to work and available for work during periods when there was no one employed to protect his substantial investment. We cannot accept the allegation that the claimant left his business and investment in the care of an individual hired at the rate of $1.25 an hour for only three months before he was discharged for cause. We must conclude that the claimant, operating as an `employing unit' was engaged in business for profit; that he was not, in fact, unemployed and available for work after March 1, 1962. * * *"
After a consideration of the entire record, including the testimony and the reasonable inferences to be drawn therefrom, we are satisfied that the Board's factual findings were substantially supported, and that its interpretation of the applicable law was correct.
Affirmed.