525 P.2d 993

David E. CORWIN, Claimant-Appellant,

v.

SUNSHINE MINING COMPANY, Employer,
and Department of Employment,
Defendants-Respondents.

No. 11310.

Supreme Court of Idaho.

July 10, 1974.

Rehearing Denied July 25, 1974.

David E. Corwin, pro se.

No appearance for defendants-respondents.

BAKES, Justice.

On May 29, 1972, claimant appellant David E. Corwin was laid off from his regular employment as a warehouseman for the Sunshine Mining Company. Claimant was unable to find other suitable employment, which he attributed in part to the fact that he was blind in one eye. Claimant applied for and was found eligible for unemployment insurance benefits effective May 28, 1972.

On July 15, 1972, claimant purchased a service station building and began remodeling the building in preparation for opening a drive-in restaurant. Financing for the building was obtained by a mortgage on the building and from his father, who mortgaged his home. Claimant's goal in remodeling the building was to establish a business which would provide an income for himself and his family. Claimant substantially remodeled the building, spending approximately $30,000 in this enterprise, and, with his father's assistance, did the remodeling work himself, working approximately 15 hours a day, seven days a week, for at least a three month period. Claimant was at all times during the remodeling work willing to resume employment with Sunshine Mining Co., and did in fact resume employment when called back to the mine in December, 1972. Claimant filed weekly claims for unemployment insurance benefits during the period in which he was engaged in remodeling the building, since the business was not in operation and was

not actually generating income during this period of time. On August 17, 1972, the local office of the Department of Employment learned that the claimant was engaged in the remodeling of the service station building. The Department of Employment then determined that the claimant was in fact not unemployed, and was thus not eligible for benefits effective July 16, 1972, and that he had been paid benefits in the amount of $65.00 to which he was not entitled. This decision of the Department of Employment was affirmed by the appeal examiner and subsequently by order of the Industrial Commission.

The resolution of this case requires a determination of the extent to which an unemployed person can make some industrious use of his time before he is considered self-employed and thereby rendered ineligible for unemployment benefits.[1] The difficulty in making this determination is illustrated by the following example: A factory worker is laid off from his job. He applies for and receives unemployment benefits. While unemployed he does the following:

(1) mows the lawn;

(2) washes the windows of the house;

(3) paints the trim;

(4) paints the entire house;

(5) remodels his child's bedroom;

(6) adds a room on to the house;

(7) builds a new house;

(8) remodels a neighbor's house.

The problem facing the Industrial Commission is to determine at which point in the foregoing sequence of events he becomes "self employed."

The resolution of a similar issue in the case of Hatch v. Employment Security Agency, 79 Idaho 246, 313 P.2d 1067 (1957), was fairly clear. In *Hatch*, the unemployed carpenter's full time private endeavors followed his customary craft. By constructing and thereafter selling a modern three bedroom home, the Court found him to be fully employed within the meaning of I.C. § 72–1312,[2] as he received actual and prospective wages or remuneration within the meaning of I.C. § 72–1328.[3] The location of the present case on the spectrum between "unemployed" and "self employed" is not so clear, because this case involves an unemployed worker who is merely preparing to enter a line of endeavor completely different from his usual employment.

---

[1] I.C. § 72–1366(*l*) establishes as one of the personal eligibility conditions that a benefit claimant shall not have a principal occupation of self employment.

[2] "72–1312. Compensable week.—(a) A week of unemployment with respect to which an eligible benefit claimant shall be entitled to benefits shall be known as a compensable week; provided, however, that no person shall be deemed to be unemployed while he is attending a regular established school excluding night school, except where he has been assigned to a refresher or special training course by the director. (b) A compensable week of a benefit claimant shall be a week of either no work or less than full-time work— (1) all of which occurred within this benefit year; and (2) with respect to which benefits have not been paid to him; and (3) in which he complied with all of the personal eligibility conditions prescribed in section 72–1366; and (4) in which the total wages payable to him for less than full-time work performed in such week amounted to less than one and one-half (1½) times his weekly benefit amount; provided, however, that for the purpose of this section all amounts which a benefit claimant receives or would receive if claimed after normal retirement for his primary benefits under the Federal Old Age and Survivors Insurance Act or a retirement plan in which his employer has paid all or a part of the cost shall be treated as wages, but this provision shall not apply to: retirement payments received as a result of service in the armed forces of the United States; or monetary entitlement under section 72–1367, accruing as a result of covered employment after retirement; and (5) all of which occurred after a waiting period as defined in section 72–1329."

[3] "72–1328. Wages.—(a) The term 'wages' means all remuneration for personal services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with rules prescribed by the director. . . . ."

In Bartel v. Employment Security Department, 60 Wash.2d 709, 375 P.2d 154 (1962), the Washington Supreme Court adopted the following criteria to be considered by the administrators in determining whether or not a person is self employed within the purview of the Employment Security Act:

" '(1) Availability of applicant for resumption of regular employment.

" '(2) Hours per week devoted to activity in question.

" '(3) Net income earned from such activity.

" '(4) Nature of regular employment.

" '(5) Does the applicant engage in the same activities during the course of his regular employment and, if so, to what extent?' " 375 P.2d at 158.

We hold that these considerations, though not exclusive, are valid tools to aid the commission in drawing the fine line between an industrious "unemployed" person and a "self employed" person in accordance with the public policy of the state.[4]

██ Applying the above five principles to the facts found by the commission in this case, the factors appear to be favorable to claimant-appellant. Claimant testified that he was at all times available to work and tried to find other work besides his employment with the Sunshine Mining Co. Upon recall by the Sunshine mine he immediately returned to work. Appellant earned no income from his activity in constructing the building, as the drive-in was not open for business. The remodeling of the building was a completely separate and foreign endeavor from appellant's regular line of work. The only factor which does not support appellant's claim is that he worked for a substantial number of hours each day on his project.

From the facts as found by the Industrial Commission, we conclude as a matter of law, that the claimant was not self-employed. However, the case must be remanded for further findings concerning whether appellant satisfied the other conditions of eligibility as set forth in the unemployment compensation act.

Reversed and remanded for proceedings consistent with this opinion.

Costs to appellant.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.

---

4. "72–1302. Declaration of state public policy.—(a) As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own.

"(b) This law is enacted for the purpose of securing for this state the maximum benefits of the Act of Congress, approved August 14, 1935, known as the 'Social Security Act,' as amended, and to enable the workmen of Idaho to benefit from the provisions of said act."