THE CANTON MALLEABLE IRON CO., APPELLEE, *v.* GREEN; BOARD OF REVIEW, BUREAU OF UNEMPLOYMENT COMPENSATION, APPELLANT.

(No. 2162—Decided September 28, 1944.)

*Mr. Walter J. Mackey,* for appellee.

*Mr. Thomas J. Herbert,* attorney general, and *Mr. John M. Woy,* for appellant.

PUTNAM, J. This is an appeal on questions of law from the judgment of the Court of Common Pleas reversing the judgment of the Board of Review of the Bureau of Unemployment Compensation, allowing benefits to one Charles R. Green, an employee of The Canton Malleable Iron Company, appellee herein. Appellant claims that the judgment of the Common Pleas Court is erroneous and contrary to law.

The facts of the case as shown by the record are undisputed and are as follows:

Charles R. Green was employed by the Superior Sheet Steel Company on July 10, 1941, and quit work there on September 11, 1941. On the same date he was employed by the appellee, The Canton Malleable Iron Company, as a chipper. He worked there until December 5, 1941, when he voluntarily quit his job, without giving any notice. On April 6, 1942, he filed a claim for benefits in which he stated he was laid off for lack of work. On April 28, 1942, an initial determination of the claim was made and upon reconsideration on May 22, was adhered to. The matter was then referred to a referee pursuant to law, who on December 3, 1942, upheld the original determination. On January 7, 1943, the board of review declined a further appeal to it and an appeal was taken to the Common Pleas Court by appellee herein. The Common Pleas Court reversed the decision of the board of review, holding that same was unlawful, unreasonable and against the manifest weight of the evidence.

On April 29, 1942, as shown by exhibit A herein, the appellee sent Green the following letter to his last known address:

"Mr. Charles Robert Green,
520 17th Street S. E.,
Canton, Ohio.
                "Charles Robert Green
                SS No. 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
"Dear Sir:
"Our records show that you voluntarily quit without just cause your employment with The Canton Malleable Iron Company on December 5, 1941.

"This is to advise you that a job is available to you and can be secured by your prompt return to it. You will have the same wages, hours, and working conditions you formerly enjoyed.

"You may consider this a formal offer of work in your usual occupation in which we will reemploy you if you will notify us immediately.
                "Yours very truly,
                "The Canton Malleable Iron Company.
"CTD:jem
"cc: Canton Unemployment office
"cc: Cambridge   "          "
"cc: Mr. Mackey."

On May 18, 1942, Green came back to work and worked until May 29th, when he again quit without notice. Thereafter benefits were paid him and charged to the account of appellee. At none of the hearings above mentioned did Green appear or present any testimony. The employer produced testimony that had Green returned to work at any time after May 29th, he could have continued his usual work.

The referee's decision was as follows:

"The administrator's decision upon reconsideration dated May 22, 1942, is hereby affirmed. The claim is allowed. Benefit year begins April 5, 1942. Weekly benefit amount $11. Waiting period 5 weeks. Potential maximum benefits payable during benefit year 12 times weekly benefit amount."

It is to be noted that in making this award the claimant Green was penalized by virtue of Section 1345-6, subsections b and c, General Code, by having his waiting period extended from 2 to 5 weeks and his maximum benefit weeks reduced from 18 to 12 weeks.

The appellant states in substance in its brief and contends that, while both the bureau and board of review found that the claimant "had voluntarily quit his work without just cause," the only penalty in the law therefor is the one authorized under Section 1345-6, subsections b and c, General Code, and that our law definitely does not provide that an employee quitting under such circumstances shall be denied benefits.

The provisions of the law applicable hereto, appearing in Section 1345-6, General Code (119 Ohio Laws, 836, 837), are as follows:

"a. No individual shall be entitled to any benefits unless he or she * * *

"(4) is able to work and available for work in his usual trade or occupation, or in any other trade or occupation for which he is reasonable fitted; and

"(5) is unable to obtain work in his usual trade or occupation or any other employment for which he is reasonably fitted including employments not subject to this act.

"b. * * * An individual who has been discharged for just cause in connection with his work or who has voluntarily quit his work without just cause and thereafter is unable to secure other employment, shall have a waiting period of three additional weeks during which no benefits shall be payable. * * *

"c. An individual's maximum weeks of benefits per year shall be reduced by six weeks in the event his unemployment results from discharge for just cause in connection with his work, or from voluntarily quitting his work without just cause in connection with such work.

"d. Notwithstanding the provisions of subsection (a) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual: * * *

"(2) has refused to accept an offer of work for which he is reasonably fitted."

These provisions of the law must, of course, all be construed together. The interpretation placed upon these statutory provisions by the appellant is shown by the following language used by the referee as the basis of his decision:

"Claimant left his employment without just cause in connection therewith and accordingly his waiting period was extended and benefits reduced. He accepted the offer of work made him and again voluntarily quit this employment. No reason has been advanced for claimant's subsequent separation. While it is apparent claimant left his employment voluntarily without giving any reason which would amount to just cause for the action taken by him, yet the law provides for this type of quitting by extension of waiting period and reduction of benefits payable.

"There is no evidence that claimant was offered work after May 29, 1942. Even though claimant left his subsequent employment without just cause, there is no evidence which tends to show that claimant was informed that he was able to secure work in his usual trade or occupation or any other work for which he was reasonably fitted. The claimant having left the employment voluntarily for the second time without giving the employer notice, would not know or be led to believe that work would be available for him. The law apparently differentiates between voluntary quitting without just cause and inability to obtain work in his usual trade or occupation, and to hold that a

claimant was able to obtain work when no showing was made of an offer of reemployment, would tend to nullify the provisions and conditions of the statute which provides for the benefits to which a claimant may be entitled for leaving his work voluntarily without just cause in connection therewith.''

With this reasoning we do not agree.

It is to be noted that Section 1345-6, subsection b, second paragraph, and subsection c, General Code, providing for the penalty when one voluntarily quits his work without just cause, is limited by the phrase ''and thereafter is unable to secure other employment.'' If he is unable to secure other employment he may be paid after and in accordance with penalty, but if he is able to secure employment there is no provision for any payment, because Section 1345-6, subsection a, (4), and (5), General Code, distinctly says that no individual shall be entitled to any benefits unless he is able to work and is unable to obtain work.

Subsection d, (1) and (2), is an additional limitation on subsection a and certainly limits the discretion of the bureau in declaring claimant eligible for benefits with penalties under subsections b and c.

In either case, if he is able to find work or refuses to accept an offer of work for which he is reasonably fitted, he is ineligible for benefits. It certainly does not follow that to be ineligible he must have refused an offer of work. He must also be unable to find work.

The law does not contemplate that the job must seek out the man and coax him to come to work. It presupposes some effort on the part of the employee to secure work. Nor does the law contemplate the granting of benefits to an employee who refuses to work at his regular job, when that job is open to him.

When one quits his regular job or employment in the absence of a showing to the contrary the presump-

tion must be that same is still open to him. In the instant case the presumption is fortified by the fact that having once quit his job on December 5th, he was again re-employed on May 18th, after he presented himself in response to the letter of April 29th from the company, stating that his job was open to him. It is true that after he again quit on May 29th no further letter was sent him that his job was open, nor in our opinion was that necessary, because the presumption would be that it was. While he could not be deprived of benefits because he had refused an offer of work, as provided in subsection d (2), certainly the burden of proof would be upon him to show under subsection a, (4) and (5), that he was unable to obtain work. As before stated, claimant not only failed to appear at any of the hearings, but no testimony was submitted in his behalf to show his inability to obtain work.

The claimant was clearly ineligible for benefits and the Common Pleas Court did not err in its judgment. The same must be and is affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and SHERICK, J., concur.