## KENTUCKY UNEMPLOYMENT INS. COMMISSION v. HENRY FISCHER PACKING CO.

Court of Appeals of Kentucky.
June 19, 1953.

Ernest Woodward, II, Woodward, Hobson & Fulton, Louisville, for appellee.

STEWART, Justice.

This is an appeal from a judgment of the lower court reversing an order of the Kentucky Unemployment Insurance Commission granting benefits to Jesse Whalen, now 43 years of age. See KRS Chapter 341.

The claimant had been in the employ of appellee, Henry Fischer Packing Company, hereinafter referred to as "the company," for four and one-half years as a butcher and scriber. His duties required him to use sharp knives in close proximity to his fellow employees. On June 1, 1950, Whalen suffered a seizure of epilepsy while working. He collapsed and fell against a protruding bolt, sustaining head injuries that required ten stitches to close the wounds. Following this fall, Whalen was examined by physicians in two different hospitals. On June 22, 1950, the company doctor advised it by letter that the claimant had suffered an epileptic seizure and that he believed "this man has no place in your plant where he might come in contact with machines, knives, or any sharp pointed instruments. In other words, it is important that he be placed on a job where if he should have an epileptic seizure his fall would be short and there would be a minimum of danger in his fall for himself and also for the employees around him." It was brought out that the claimant had not before and has not since June 1, 1950, been ill from epilepsy. After a conference between company and union officials, it was decided that notwithstanding Whalen's record as a satisfactory employee his best interests would require his dismissal. Efforts were made to obtain employment for him at Nichols Hospital but to no avail. On June 26, 1950, he was discharged.

On July 5, 1950, Whalen filed a claim for unemployment insurance benefits, giving June 1, 1950, as the last day he had worked and his reason for separation from work as "discharged." The company, his sole base period employer, duly filed a protest, stating that the reason for separation from employment was "discharged for misconduct" and "worker is unable and un-

R. Campbell Van Sant, Christopher C. Frishe, G. B. Johnson, Jr., Frankfort, for appellant.

available for work." Whalen reported for weeks of unemployment ending July 11 and July 18, 1950. He then worked for another employer for a month until August 16, 1950. On August 24th he reopened his claim for benefits and reported for additional compensable weeks. On the basis of the examiner's investigation, an adjusted determination was issued September 21, 1950, holding that the claimant "was discharged for reasons other than misconduct connected with work," and that "claimant is able and available for suitable employment." The company thereupon filed an appeal for a hearing before the referee. The referee affirmed the adjusted determination. An appeal was then granted for a review by the commission, which in turn upheld the referee's decision. The administrative remedies having been exhausted, the company secured a judicial review, pursuant to KRS 341.450, in the Jefferson Circuit Court, Chancery Branch, Second Division, which rendered a judgment reversing the commission's holding that the claimant was available for suitable work. The commission now seeks a reversal of the judgment.

KRS 341.350 provides that an unemployed worker shall be eligible for benefits, if, among other things:

"  *   *   * (3) He is physically and mentally able to work;

"(4) He is available for suitable work;  *   *   *."

KRS 341.100 must also be considered as shedding light on the problem at hand. It reads: "In determining for any purpose under this chapter whether or not any work is suitable for a worker the commission shall consider, among other pertinent conditions, the degree of risk involved to his health, safety and morals; his physical fitness and prior training; his experience and prior earnings; his length of unemployment and prospects for securing local work in his customary occupation; and the distance of the available work from his residence."

There is no question of the claimant's meeting the other statutory requirements of KRS 341.350. He filed his claim, registered for work, had sufficient wage credits and served a week of unemployment.

The issue to be decided is whether an epileptic who has been engaged in work he otherwise is capable of performing but which he is no longer suitable for, because of the potential hazard to himself and his fellow workers if seized by a fit, may be deemed to be available for work he otherwise is able to labor at for the reason that epilepsy creates no danger to himself or to his fellow workers; and, if the answer to this question is in the affirmative, does the work last described constitute suitable work within the purview of the applicable unemployment insurance law?

The Chancellor, in denying the claimant to be entitled to unemployment benefits, based his ruling upon this conclusion: "If a man is physically unable to perform his customary labors, the mere fact that he is physically able to perform some other duties should not make him eligible for compensation." Appellee urges this Court to sustain the Chancellor's view. The commission maintains (a) that this claimant is physically and mentally able to do work which does not require the use of machines, knives, or any sharp pointed instruments, and (b) that this claimant need not necessarily be available for his most recent or customary work but that, on the other hand, he is available for suitable work if he in good faith has sought work which is suitable to his diminished powers and such work is commonly available in the vicinity where he lives.

We must first decide whether this claimant is physically and mentally able to engage in work which may be determined to be suitable because it does not embrace the dangers which rendered his previous work unsuitable. This proposition has never been passed upon by this Court but other jurisdictions having similar statutes have considered it. In Hinkle v. Lennox Furnace Company, 84 Ohio App. 478, 83 N.E.2d 903, 907, affirmed with an opinion by the Ohio Supreme Court in 150 Ohio St. 471, 83 N.E.2d 521, a Court of Appeals of Ohio had before it an application for unemployment benefits of a 58 year old claimant who was too ill to perform the duties of his

last employment as a sweeper but who was physically capable of filling the position of a watchman or checker. As the evidence in that case showed the claimant was physically capable of performing types of light work, that court held he was able to work within the meaning of the statute, saying: "The phrases 'able to work' and 'available for work,' as used, prescribe and are intended to prescribe two separate and distinct states of fact. The phrase 'able to work,' as used, means 'physical capability to work,' while the phrase 'available for work,' as used, does not comprehend 'physical capability to work' as it would in the ordinary sense, but means 'readiness to work.' "

In the present case, it was not contended that the claimant was physically incapable of performing any work, but rather that he, having had a seizure of epilepsy, was unfit to follow the butchering trade. Furthermore, the record reveals that the claimant was classified for employment as a laborer, and, after the seizure, the company and the union recognized his continuing ability to work as a laborer by its attempt to help him secure employment. It would seem that he had not attained the status of a highly skilled worker. We, therefore, conclude that so long as an ordinary laborer is able to perform some type of work, he should be deemed able to work within the meaning of KRS 341.350(3).

The determination of availability for work is largely a question of fact. And at the outset we might say we are of the opinion that the term "availability" has a much broader meaning than that attributed to it by the Chancellor. This Court has not heretofore defined the expression "available for suitable work." The interpretation urged by the commission conforms to that expressed by the Supreme Court of Michigan in Dwyer v. Appeal Board, 321 Mich. 178, 32 N.W.2d 434, 438, wherein that court said:

"The basic purpose of the requirement that a claimant must be available for work to be eligible for benefits is to provide a test by which it can be determined whether or not the claimant is actually and currently attached to the labor market. To be available for work within the meaning of the act, a claimant must be genuinely attached to the labor market, i. e., he must be desirous to obtain employment, and must be willing and ready to work. Such is the rule in other jurisdictions. (Citing cases.) * * *

"The test suggested is subjective in nature. Whether or not a claimant is in fact available for work depends to a great extent upon his mental attitude, i. e., whether he wants to go to work or is content to remain idle. Indicative of such mental attitude is evidence as to efforts which the person has made in his own behalf to obtain work. A person who is genuinely attached to the labor market and desires employment will make a reasonable attempt to find work, and will not wait for a job to seek him out."

In Shellhammer v. Unemployment Compensation Board of Review (Pa.), 162 Pa. Super. 327, 57 A.2d 439, 440, a claimant left her employment at Greensburg, Pa., and moved to Avonmore, Pa., a small town of approximately 1000 people. She then filed for unemployment benefits. The court, in denying her claim for the reason that she had detached herself from her employment opportunities and had thereby voluntarily removed herself from the labor market, had this to say on the availability requirement for work:

"* * * The mere fact that a claimant has moved from one locality to another does not create a basis for holding him unavailable for work. If he registers for work in the new locality, and labor-market conditions there afford reasonable opportunities for work, he is available for work * * * the availability rule does not necessarily require that a claimant be available for his most recent work or his customary work. It is sufficient if he is able to do some type of work, and there is reasonable opportunity for securing such work in the vicinity in which he lives. * * *"

KRS 341.100, quoted above, furnishes a yardstick for measuring the suitability of any work for a claimant. It shields him from accepting employment that is detrimental to him in any way. It also requires him to seek, within his ability, only that work which he has some expectancy of obtaining. Finally, it provides that many other factors must be considered besides the customary occupation of the claimant in determining the type of labor he can perform as a condition to his being entitled to receive unemployment benefits. As a matter of fact, we can construe this statute in no other light than that it allows the commission considerable latitude in deciding whether or not any employment is suitable for a worker.

If the commission has discretion within a wide framework to resolve the question as to whether the work is suitable for the employee, it logically follows that it may within certain limits determine the question as to whether the worker is available for suitable work. To be available for suitable work within the meaning of KRS 341.350(4), when considered in connection with KRS 341.350(3) and KRS 341.100, we are of the opinion that an employee must be genuinely attached to the labor market, that he must be willing and ready to work, that he has the capacity to perform some type of work, although he may be unable to do his customary work, and that work within his power may be reasonably procured where he lives.

Here the claimant did not voluntarily leave his job but was discharged from it for reasons beyond his control. He was physically and mentally able to perform any number of unskilled jobs which abound in the vicinity of his residence. His illness did not preclude him from accepting or doing work not dangerous to him or to others if he should have another seizure. He remained attached to the labor market. It is not disputed that he has sought employment in good faith and from time to time has worked at such jobs as he could secure. He was, we conclude, eligible for unemployment insurance benefits at the time he did not find employment.

Wherefore, the judgment is reversed and remanded to the circuit court for the entry of a judgment affirming the award of the commission.