In re Thomas

IN THE MATTER OF: GENEVA H. THOMAS AND DY-DEE SUPPLY
    CO., INC. AND EMPLOYMENT SECURITY COMMISSION OF
    NORTH CAROLINA

No. 7221SC11

(Filed 23 February 1972)

Master and Servant § 108— unemployment compensation — availability for
    work — advanced age

    A 70-year-old former laundry employee is not unavailable for
work merely because employers in her locality do not customarily em-
ploy persons who have reached her age. G.S. 96-13(3).

    Chief Judge MALLARD and Judge GRAHAM concurring in part and
dissenting in part.

APPEAL by claimant from *Kivett, Judge,* 7 June 1971 Ses-
sion of Superior Court held in FORSYTH County.

This is a proceeding under the North Carolina Employment
Security Law wherein Geneva H. Thomas (claimant) seeks
weekly unemployment benefits from 4 November 1970 through
19 January 1971. The Employment Security Commission (Com-
mission) made findings and conclusions which, except where
quoted, are summarized as follows: The claimant is a seventy-
year-old woman with a fifth-grade education. She worked in a
laundry, Dy-Dee Supply Co., Winston-Salem, N. C., as a "laun-
dry hand" for twenty years prior to her voluntary "retirement"
on 10 June 1970. Prior to working in a laundry, claimant worked
in a tobacco factory. She has no other work experience. The
claimant has received Old Age and Survivor Insurance benefits
(Social Security) since 1962. She is presently receiving Social
Security benefits at the rate of $89.00 per month. The claimant
received no retirement pay or pension from her last employer.

    "3. Under the present benefit series, the claimant filed a
claim on August 12, 1970, and to the date of the hearing
before the Appeals Deputy on January 22, 1971, she had
filed twenty-three consecutive weekly claims for benefits
through the week ending January 19, 1971. She has had
no employment since she voluntarily separated from Dy-Dee
Supply Company, Inc., on June 10, 1970, to enter into re-
tirement. The claimant's right to benefits from August 12,
1970, through November 3, 1970, has been determined
under Docket Nos. 4708-12, 4921-12, and 41830-AT-70.
Said determinations were that the claimant was not avail-

able for work and therefore not eligible for benefits. The determinations of the deputies were not appealed and thus have become final."

"The record indicates that the claimant was in good health and thus, presumably, was able to work. The record also shows that the claimant sought work each week (while filing claims) with several laundries, churches, motels, and other businesses. However, these efforts were almost useless because these potential employers would not hire anyone of her age. . . . Thus, her chances of securing employment in the area in which she is experienced (laundry) are almost nil because of her advanced years. In the domestic and related fields, the claimant has almost no hope of securing employment due to her lack of experience, limited education, and advanced years.

\*　　\*　　\*

. . . [I]t has not been established that she is available for work within the meaning of the law, because it does not appear that she had a reasonable chance of obtaining employment within her locality because of her advanced age, lack of skills, and limited education.

Considering the fact that the claimant voluntarily relinquished her employment to retire when she could have continued working, it is concluded that the claimant is not realistically an active member of the labor force. She is therefore not available for work and is ineligible for benefits."

Based on its findings and conclusions, the Commission entered an order decreeing:

"(1) The claimant is ineligible for benefits from November 4, 1970, through January 19, 1971; and

(2) The first continued claim filed by the claimant following the date this decision becomes final shall be referred to a Claims Deputy on the question of her chances of getting work."

From a judgment of the superior court dated 10 June 1971 affirming the decision of the Commission, the claimant appealed to the Court of Appeals.

*Vernon Hart for claimant appellant.*

*D. G. Ball, H. D. Harrison, Jr., Howard G. Doyle and Garland D. Crenshaw for the Employment Security Commission of North Carolina, appellee.*

HEDRICK, Judge.

Claimant concedes that the Commission's findings, material to our decision, are supported by competent evidence in the record. With the exception of the conclusion that claimant is not available for work within the meaning of the law, the findings and conclusions of the Commission will support an order that claimant is eligible for benefits from 4 November 1970 through 19 January 1971. Thus, the one question presented on this appeal is whether the conclusion made by the Commission that claimant is not available for work within the meaning of the law is supported by the findings of fact.

The law referred to is G.S. 96-13 which, in pertinent part, provides:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the Commission finds that—

＊　　＊　　＊

(3) He is able to work, and is available for work: Provided that no individual shall be deemed available for work unless he establishes to the satisfaction of the Commission that he is actively seeking work. . . . "

In *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968), Justice Lake, speaking for the North Carolina Supreme Court, said, "The terms 'able to work', 'available for work' and 'suitable employment' are not precise terms capable of application with mathematical precision." Neither the Legislature nor the North Carolina Supreme Court has formulated an all-embracing rule or test for determining what constitutes being "available for work."

In concluding that the claimant was not available for work within the meaning of the law, the Commission formulated and used its own test of availability for "voluntary retirees." Although the claimant might be classified a "voluntary retiree," such a test as formulated by the Commission has no application

in the present case because there is nothing in the Employment Security Law relating to "voluntary retirees." In its Decision, the Commission reasoned:

" . . . [I]t has not been established that she is available for work within the meaning of the law, because it does not appear that she had a reasonable chance of obtaining employment within her locality because of her advanced age, lack of skills, and limited education.

Considering the fact that the claimant voluntarily relinquished her employment to retire when she could have continued working, it is concluded that the claimant is not realistically an active member of the labor force."

In 55 Yale L.J. 123, we find the following:

"The availability requirement is said to be satisfied when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them."

We think the Commission's findings of fact will support a conclusion that a "labor market" exists in the Winston-Salem area for the type of service which the claimant has to offer, and that the claimant is "genuinely attached to the labor market." There is no finding that the type of service which the claimant is offering is not being generally performed in the Winston-Salem area. On the contrary, we think it could be fairly concluded from the findings of fact that laundry and domestic work is being performed in the Winston-Salem area at all times.

In *Krauss v. A & M Karagheusian, Inc.*, 13 N.J. 447, 100 A. 2d 277 (1953), we find the following statement: "The prac-

tice of some employers not to hire applicants above certain ages irrespective of their capacity and willingness to do the work the employer has to offer is a voluntary standard and is not embraced in any legal prohibition." Therefore, the fact that employers in Winston-Salem do not customarily employ persons seventy years of age is of no legal significance in determining whether a labor market exists for the type of services a claimant has to offer.

Although the circumstances of the claimant's work separation are to be considered in determining whether he is available for work and genuinely attached to the labor market, *Krauss v. A & M Karagheusian, Inc., supra,* we do not think that the fact that she voluntarily retired is alone sufficient to support a conclusion that the claimant is "not realistically an active member of the labor force." The record in the present case clearly shows that the claimant was disqualified from receiving benefits for more than the maximum period (twelve weeks), because she voluntarily left her employment with Dy-Dee Supply Co. without good cause attributable to the employer. G.S. 96-14(1). The fact that the claimant sought work each week at several laundries, churches, motels, and other businesses while filing claims will support a conclusion that the claimant was actively seeking work and was "genuinely attached to the labor market."

We think what was said in *Claim of Bourne,* 282 App. Div. 1, 122 N.Y.S. 2d 25 (App. Div. 1953), is appropriate:

"It is a matter of growing importance to the community to continue to utilize the skills and experience of its older people; and as the life span expands the problem becomes progressively more pressing. The Unemployment Insurance Law is intended to protect and continue the working activity of all members of the community.

It is not merely for the protection of young workers but also of workers of advanced years who remain in the labor market. We take unusual care in this decision not to suggest or to imply that age alone necessarily results in nonavailability in the labor market. Availability is the statutory test; but it must be applied individually to the facts of each case as the administrator sees them.

Age, linked to a lack of physical or mental capacity to work, or age coupled with restrictions which cut down greatly the

possibility of employment, may fairly result in a finding of non-availability. But an able aged man is an available man if he has remaining abilities that can be sold on the market."

We think the Commission's conclusion that the claimant is not available for work is erroneous and not supported by the facts found, for it is clear from the decision of the Commission that its conclusion was based on the fact that the claimant is a seventy-year-old woman with a fifth-grade education and limited skills. We think the facts found by the Commission compel the conclusion that a labor market exists in the Winston-Salem area for the type of service the claimant has to offer and that she is genuinely attached to the labor market, and that she is available for work within the meaning of G.S. 96-13.

For the reasons stated, the judgment of the superior court affirming the decision of the Employment Security Commission is reversed and the case is remanded to the superior court for the entry of an order remanding the proceeding to the Employment Security Commission with directions that the Commission make a conclusion with respect to whether the claimant was available for work from 4 November 1970 through 19 January 1971, based on the facts already found and not inconsistent with the principles expressed in this opinion.

Reversed and remanded.

Chief Judge MALLARD and Judge GRAHAM concur in part and dissent in part.

Chief Judge MALLARD concurring in part and dissenting in part.

Claimant lives in the Winston-Salem area. In my opinion, the fact that employers in that area who employ domestic and laundry workers (the only skills possessed by claimant) customarily do not employ persons over seventy years of age, does have legal significance in determining whether a "labor market" exists there and whether claimant is able and available for work.

The Commission, however, in its "conclusions of law," stated the degree of proof it used in finding the facts, as fol-

---

---

lows: "It must be shown by clear, cogent, and convincing evidence that she is available for work under the law. This has not been done in this case." This was error. The degree of proof required is by the greater weight of the evidence. See G.S. 143-318(1).

Had the Commission found the facts by the greater weight of the evidence, it is my opinion that its legal conclusions are correct and that the claimant "is not realistically an active member of the labor force," and "(s)he is therefore not available for work and is ineligible for benefits." It is my opinion that the Commission, in substance, properly concluded that under the standards established by employers in the Winston-Salem area, this claimant, a laundry worker who voluntarily retired after age 70 and the next week applied for benefits, does not possess abilities that can be sold on the available market and therefore was not able or available for work. Under the facts actually found in this case, no "labor market" exists in the Winston-Salem area for the type of service which this claimant has to offer.

I agree that the case should be remanded, but only for the purpose of determining the facts by the greater weight of the evidence and then proceeding lawfully.

Judge GRAHAM concurring in part and dissenting in part.

The Commission denied claimant benefits "because it does not appear that she had a reasonable chance of obtaining employment within her locality because of her advanced age, lack of skills, and limited education." Insofar as this record shows, claimant is no less skilled and no less educated now than she was during the twenty years she was employed as a laundry worker. Moreover, the work in which claimant is experienced requires minimal skills and education. Consequently, it appears that she may have been denied benefits because at age 70 it is less likely that potential employers will hire her than would be the case if she were a younger person. I agree with Judge Hedrick that this is error and that the case must be remanded.

There is no statutory basis for denying compensation to a claimant who is willing, able and available to accept suitable work solely because his age has lessened his employment prospects. Whether "advanced age" should alone be grounds for determining that a claimant is unavailable for work is a matter

for the General Assembly and not for the Commission or the courts.

I dissent, however, from that portion of Judge Hedrick's opinion which directs the Commission to enter an order awarding benefits. The fact that benefits were denied on grounds which cannot be sustained does not mean that claimant has satisfied the Commission, as she is required to do (G.S. 96-13), that she is able to work and is available for work. When she quit her job to retire, claimant removed herself from the labor market. Whether she thereafter re-entered the labor market and became "available for work" is a question which still must be determined by the Commission.

It is noted that one finding made by the Commission suggests that claimant may have failed to show that she is available for work in that she lives with and cares for a 54-year-old retarded daughter and is not certain arrangements can be made for the care of her daughter should claimant find employment. The Employment Security Act was not designed to provide payments to a worker whose family responsibilities are such as to preclude the acceptance of any and all employment. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1.

Furthermore, the record contains evidence which would support a determination that claimant has not seriously re-attached herself to the labor market. She quit her job on 10 June 1970 in order to retire. One week later she filed for unemployment benefits at the Commission office which is only six blocks from her home. No explanation is made as to why she changed her mind about retirement within such a short period of time. When asked if she had decided to return to work, claimant stated: "Well, I said day work. You know, I thought maybe I would get a couple of days work at age 70—I do my best and I have a retarded daughter at the house. And it takes some of my time there with her. . . . " Claimant was asked why she wanted to start work again. She stated: "What you all—this employment required—when I retired at 70, I said, well, I want to retire while I was in my good health and then in case they called me back, I would go back but you know, I didn't want to stay in there and fall out. I think 70 years was a good service. I think that [sic] right. Ain't I right?" Although on several occasions claimant stated that she would accept full-time employment even if it resulted in a loss of Social Security benefits, on other

occasions she indicated that she would not want to earn more than $1,680.00 in a single year and thereby be forced to give up a portion of these benefits. A full-time job paying $1.45 an hour, which is the amount claimant earned when she retired, would result in earnings in excess of this amount.

As stated by the Michigan Supreme Court in *Dwyer v. Unemployment Comp. Comm.*, 321 Mich. 178, 189, 32 N.W. 2d 434, 438, "[w]hether or not a claimant is in fact available for work depends to a great extent upon his mental attitude. . . . " I vote to remand this case to the superior court with directions that it be remanded to the Employment Security Commission for a re-determination as to whether claimant is "available for work."