244 S.E.2d 331 (1978)
Alberta LONDON et al.
v.
BOARD of REVIEW OF the W. Va. DEPT. OF EMPLOYMENT SECURITY et al.
No. 13984.
Supreme Court of Appeals of West Virginia.
May 16, 1978.
*332 Charles R. Garten, Jr., Charleston, for appellants.
Jack O. Friedman, Charleston, for appellees.
HARSHBARGER, Justice:
Appellants are 86 employees of a Headstart (pre-school education) program operated by the non-profit, federally funded Council of the Southern Mountains, Inc. They are teachers, classroom aides, social workers, drivers and cooks, and have no employment tenure or continuing contracts. The Council terminates its Headstart employees at the end of each school year and then re-hires them the next fall if funds are available.
Appellants' employment ended in June, 1975 and they applied for unemployment benefits. They were denied compensation by a ruling that found them ". . . ineligible indefinitely in that they were not available for full-time work for which fitted by prior training or experience, as provided in Chapter 21A-6-1, subsection 3 of the W.Va. Unemployment Compensation Law." The basis for this ruling was evidence that appellants had not been job-hunting except by registering at the employment office.[1]
This decision was affirmed by the Unemployment Compensation Board of Review and Circuit Court of Kanawha County, from which appeal was taken here.
The legislative intent in enacting the Unemployment Compensation Law is expressed in Article 1, Section 1, as follows:
The purpose of this chapter is to provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment. In the furtherance of this objective, the legislature establishes a compulsory system of unemployment reserves in order to
(1) Provide a measure of security to the families of unemployed persons.
(2) Guard against the menace to health, morals, and welfare arising from unemployment.
(3) Maintain as great purchasing power as possible, with a view to sustaining the economic system during periods of economic depression.

*333 (4) Stimulate stability of employment as a requisite of social and economic security.
(5) Allay and prevent the debilitating consequences of poor relief assistance.
The Act should be liberally construed in order to effectuate its purpose of conserving the public good and preserving the general welfare. Davis v. Hix, 140 W.Va. 398, 84 S.E.2d 404 (1954).
The liability to pay and the right to receive unemployment compensation benefits rests upon the Unemployment Compensation Act. And such Act, being remedial in nature, its beneficent provisions should be liberally applied. Bennett v. Hix, 139 W.Va. 75 at 83, 79 S.E.2d 114 at 118 (1953).
Accord: Bowen v. Review Board of Indiana Employment Security Division, Ind.App., 362 N.E.2d 1178 (1977); Michigan Employment Security Comm. v. Wayne State University, 66 Mich.App. 26, 238 N.W.2d 191 (1975); Frumento v. Unemployment Compensation Board of Review, 466 Pa. 81, 351 A.2d 631 (1976); Gesualdi v. Board of Review of Dept. of Employment Security, R.I., 374 A.2d 102 (1977); Daily Herald Co. v. Employment Security Dept., 17 Wash.App. 865, 566 P.2d 929 (1977).
The statutory conditions for eligibility are found in W.Va.Code, 21A-6-1.
An unemployed individual shall be eligible to receive benefits only if the commissioner finds that:
(1) He has registered for work at and thereafter continues to report at an unemployment office in accordance with the regulations of the commissioner.
(2) He has made a claim for benefits in accordance with the provisions of article seven [§ 21A-7-1 et seq.] of this chapter.
(3) He is able to work and is available for full-time work for which he is fitted by prior training or experience.
(4) He has been totally unemployed during his benefit year for a waiting period of one week prior to the week for which he claims benefits for total unemployment.
(5) He has within his base period earned wages for employment equal to not less than seven hundred dollars.
"Regulations of the Commissioner", section 13.03, states that an individual's claim for benefits shall be on a form that ". . . includes, but is not limited to, the following eligibility provisions, determining that the individual:
(A) Has registered for work and claims benefits.
(B) Was unemployed, able and available for fulltime work and was seeking work.

(C) Has refused no suitable job offered him and did not fail to apply for any suitable job to which he was referred by a public employment office.
(D) Has reported all work performed and wages earned. . . ." (Emphasis added.)
A booklet issued by the department, entitled "Unemployment Compensation for West Virginians" and sub-titled, "An Explanation of Your Rights and Duties under the West Virginia Unemployment Compensation Law" (July, 1976), describes causes of ineligibility:
You are ineligible to receive benefits under the following conditions:
(1) If you are not registered at an employment office (unless you are partially unemployed).
(2) If you fail to report to an Employment Security office in accordance with regulations.
(3) If you are not able to work.
(4) If you are not available for full-time work for which you are fitted by prior training or experience.
.....

Availability. You are not considered available for work:
1. If you reside in or move to a community where there is normally no employment for which you are fitted or if you do not have means of transportation to employment.

*334 2. If you are unable or unwilling to accept suitable work in one or more types of jobs found in your community.
3. If after a long period of unemployment you are unwilling to accept a job in a type of work other than that for which you may have a preference.
4. If you have failed to look for employment on your own behalf.

5. If you have failed several times to accept suitable work to which you have been referred by the employment office.
So by regulation, the West Virginia Employment Security Department has required that applicants for benefits be actively job-hunting in order to be "available for work", a necessary prerequisite in turn, to eligibility for benefits.
Other states have adopted the active work-seeking requirement by statute;[2] and still others, by judicial decision.[3]
The courts that have found personal work-seeking to be a necessary ingredient of availability, generally have reasoned that availability for work means that a claimant is genuinely attached to the labor market; that an objective proof (beyond an unemployed person's signed application for benefits) of the genuineness of an unemployed person's attachment to the labor market is required of claimants; and that such proof is only supplied by his or her search for other work. Without expressly stating so, these courts imply that the statement signed by the claimant attesting to his or her availability for work, is not trustworthy.
So eminent an authority as the Michigan Court, in Dwyer v. Appeal Board, 321 Mich. 178, 32 N.W.2d 434, 438 (1948), wrote:
"The basic purpose of the requirement that a claimant must be available for work to be eligible for benefits is to provide a test by which it can be determined whether or not the claimant is actually and currently attached to the labor market. To be available for work within the meaning of the act, the claimant must be genuinely attached to the labor market, i. e., he must be desirous to obtain employment, and must be willing and ready to work. * * *
"The test suggested is subjective in nature. Whether or not a claimant is in fact available for work depends to a great extent upon his mental attitude, i. e., whether he wants to go to work or is content to remain idle. Indicative of such mental attitude is evidence as to efforts which the person has made in his own behalf to obtain work. A person who is genuinely attached to the labor market and desires employment will make a reasonable attempt to find work, and will not wait for a job to seek him out. * * *"
Dwyer is often referred to approvingly by courts in other jurisdictions. See, Texas Employment Commission v. Holberg, supra, in which the quotation above was used to support a requirement that an unemployed *335 Texan must personally make a reasonably diligent search for work. Also see, McCormick v. Henry Koerber, Inc., Fla.App., 252 So.2d 599 (1971); Florida Industrial Comm. v. Ciarlante, Fla., 84 So.2d 1 (1955); Claim of Sapp, 75 Idaho 65, 266 P.2d 1027 (1954); Stricklin v. Annunzio, 413 Ill. 324, 109 N.E.2d 183 (1952); Mohler v. Department of Labor, 409 Ill. 79, 97 N.E.2d 762 (1951); Kentucky Unemp. Ins. Com'n. v. Henry Fischer Pack. Co., Ky., 259 S.W.2d 436 (1953); Bingham v. American Screw Products Co., 398 Mich. 546, 248 N.W.2d 537 (1976); Capra v. Carpenter Paper Company, 258 Minn. 456, 104 N.W.2d 532 (1960); Mills v. Mississippi Employment Security Commission, 228 Miss. 789, 89 So.2d 727 (1956); Worsnop v. Bd. of Rev., Div. of Emp. Sec., 92 N.J.Super. 260, 223 A.2d 38 (1966); In re Thomas, 13 N.C.App. 513, 186 S.E.2d 623 (1972) (opinion of Judge Graham, concurring in part and dissenting in part); Hyman v. South Carolina Employment Security Commission, 234 S.C. 369, 108 S.E.2d 554 (1959); Redd v. Texas Employment Commission, Tex.Civ.App., 431 S.W.2d 16 (1968).
But there are many problems of fair and equal treatment of unemployed persons that arise from a blanket requirement that all who seek the benefits of the act must be personally job-hunting.
Those of our unemployed who reside in industrial areas may have dozens of businesses to call upon each day; and those who live in less developed areas, none. A strict rule requiring personal job-seeking, therefore, can not be applied uniformly.
The Court of Appeals of Alabama discussed this problem in Alabama Department of Industrial Relations v. Anderson, 41 Ala.App. 267, 128 So.2d 532 (1961). Clara Anderson was discharged from her employment as a presser in a garment factory at Moulton, Alabama. The defense to her claim for unemployment compensation when the matter reached the courts, was that she was not available for work, having made no effort to secure employment other than reporting her availability to the government's representative. The evidence showed that in the town of Moulton (with a population of between 1600 and 1700 people), employment opportunities for women without special training and with only an eighth grade education, were limited to baby-sitting and housekeeping.
The court found its Alabama precedent to be that a claimant must show good faith and make a reasonable effort to secure suitable employment in order to prove his or her availability for work. Department of Industrial Relations v. Tomlison [Tomlinson], 251 Ala. 144, 36 So.2d 496 (1948); Department of Industrial Relations v. Wall, 34 Ala.App. 530, 41 So.2d 611 (1949); Department of Industrial Relations v. Mann, 35 Ala.App. 505, 50 So.2d 780 (1950). However, it distinguished these cases: "An analysis of the Tomlison, Wall and Mann cases, supra, discloses that they arose in Mobile, Etowah, and Jefferson Counties respectively, all being counties of large populations, and varied industries, and businesses offering varied job opportunities. As stated in the Tomlison case, supra, no hard and fast rule as to what constitutes availability for work can be laid down. Each case depends upon its own facts and circumstances.. . ." The court affirmed a trial court ruling that Ms. Anderson was available for work.
Thus, in Alabama and in many other jurisdictions,[4] whether an unemployed person is sufficiently actively job-hunting has become a question for courts to decide, using a "reasonableness" standard by which to test the unemployed person's conduct in each case. This result, springing from distrust of the unemployed worker's word that work is wanted, is the tortured conclusion necessitated by the utter impossibility of applying, fairly and equally to everyone, the job-hunting prerequisite.
There is other difficulty with the requirement. The work force is composed of people who are fitted for different types of employment. In this case, there are teachers, classroom aides, social workers, drivers and cooks. Teachers, classroom aides and *336 social workers obviously have a more limited labor market than do drivers and cooks. Any "reasonableness" standard for interpreting how much job-hunting is required of any individual who is determined to find employment for which he or she is equipped by training or experience, would require less exertion by the teacher or social worker, than by the cook or driver for whom there may be many more prospective employers. The person who is capable of doing only menial or "common" labor, and who therefore might be more likely to find work through door-to-door solicitation, is, if "reasonableness" prevails, subjected to that chore; while others, whose talents and education have prepared them for more sophisticated callings, would not be so subjected.
Another group often afflicted with unemployment are aged or infirm citizens. We need not refer to any authority except our senses to sustain the statement that they may have more difficulty getting around to prospective employers than young people. And to impose upon the aged or infirm worker the same duty to "look for work" as is expected of the young, operates as a discrimination which is unfair, unkind, and not becoming to our government.
One of the problems with a "reasonableness" standard being applied to a search for work requirement is that someone must decide whether every unemployed person has looked for work with sufficient diligence to satisfy the requirement. In the Alabama case, the judiciary became the final arbiter. In re Dunn, 131 Vt. 261, 305 A.2d 602 (1973), was decided by the Supreme Court of Vermont and adopted a standard favored by Freeman, Availability: Active Search for Work, 10 Ohio S.L.J. 181 (1949): "To establish availability for work a claimant should be expected to do what a reasonable man in the same circumstances would do to obtain work suitable for him." Again, the final decision is for the judges to make.
We find it logically difficult to accept any rule which says that an unemployed person's statement that he or she wants to work is subjective, must not be trusted, and is required to be objectively proved, but then invests a government agency or the courts with the subjective decision of whether the unemployed person has adequately proved his word!
These and other impediments to fair administration of the regulations make its equal application to all unemployed persons very suspect. Certainly, the legislature did not intend such a prerequisite to unemployment benefits eligibility, that is incapable of being applied equally to all intended to be benefited by it.
We disagree with the cases that follow the Dwyer reasoning, that an unemployed person must somehow prove the genuineness of his or her attachment to the labor market beyond the official statement required to be signed when the unemployed apply for benefits at the state employment offices.[5] There is no reason whatsoever to suspect the West Virginia working person of ingenuineness, or deceit, and hence to require such proof of attachment to the labor market beyond his or her signed statement of availability for work.
Our Court has recognized no such requirement to be a part of the "available for work" definition. In Davis v. Hix, supra, we held that "available for . . . work" simply means that the unemployed person be genuinely attached to the labor market. See also, Schettino v. Administrator, Unemployment Compensation Act, 138 Conn. 253, 83 A.2d 217 (1951); Fleiszig v. Bd. of Review of Division of Unemployment Compensation of Dept. of Labor, 412 Ill. 49, 104 N.E.2d 818 (1952); Walton v. Wilhelm, 120 Ind.App. 218, 91 N.E.2d 373 (1950); Kentucky Unemployment Ins. Commission *337 v. Henry Fischer Packing Co., Ky., 259 S.W.2d 436 (1953).
We therefore agree with the fairer, more sensible Pennsylvania rule that was first established in Bliley Electric Co. v. Unemployment Comp. Board of Review, 158 Pa. Super. 548, 45 A.2d 898 (1946) and followed in Sprague and Henwood, Inc. v. Unemployment Comp. Bd. of Rev., 207 Pa.Super. 112, 215 A.2d 269 (1965); and Shira v. Commonwealth, Unemp. Comp. Bd. of Rev., 10 Pa. Cmwlth. 457, 310 A.2d 708 (1973). In Bliley the court said:
The act provides . . . "Compensation shall be payable to any employe who is or becomes totally unemployed * * * and who * * * (b) Has registered for work at a designated employment office, * * * (d) Is able to work and available for work * * *." [footnote omitted.] The basic purpose of these requirements is to establish that a claimant is actually and currently attached to the labor force. . . Registration for work is the first requirement, and ordinarily it will be presumed that a claimant who registers is able and available for work. By registering the claimant makes out a prima facie case of availability, which is of course rebuttable by countervailing evidence, e. g., refusal of referred work, illness, inability due to superannuation, and other conditions. (Our emphasis.)
Our statute has other sections that make clear the intent of the legislature to vest the Department of Employment Security with duties to actively engage in work-finding effort on behalf of unemployed claimants. Code, 21A-6-5 sets out conditions that must be determined by the Commissioner in deciding whether a particular job is suitable for the individual;[6] and Code, 21A-6-6 fixes standards about suitability of new work.[7] Obviously these sections require the department to attempt to match the person to the job, a process that presumes claimant's job-seeking to be centered at the department. The same considerations apply to interpreting Code, 21A-6-3(3), a provision which disqualifies non-job-seeking claimants from receiving benefits.
Experience teaches that joy does not reign supreme when the "pink slip" is received; that people do not revel in being out of work, and do not need to be coaxed to take a job, Canton Malleable Iron Co. v. Green, 75 Ohio App. 526, 62 N.E.2d 756 (1944); that the mental and emotional pressures upon a worker brought about by the need to clothe, feed and house his or her family, to make payments upon debts, to maintain an economic and social position oftentimes hardwon, are great.[8]
*338 Any view that overlooks these difficult realities, and in doing so implies sloth and laziness to be the characteristic qualities of the unemployed, insults people who must work for other people to earn "a living" for themselves and their families, and imbues the citizens' character with qualities that this Court has not in its experience found to be at all pervasive in West Virginians.
We are certain our Legislature did not, when it enacted the unemployment compensation law, contemplate that those affected by it were thieves and nere-do-wells, enjoying vacations paid for from the fund, whenever they became unemployed; and hence, required even "reasonably" to prove they wanted to work by work-seeking activities beyond registration at their local state employment office (where a logo proclaiming "Jobs for People" is always prominently displayed).
The Legislature intended that registration with the state employment office would attest to and establish prima facie proof of availability; and that until a claimant refuses a referral to work or otherwise demonstrates that he or she is not available, his registration is proof enough.
Reversed.
NOTES
[1] The state employment and unemployment compensation offices are one and the same, operated as divisions of the department of employment security. W.Va.Code, § 21A-1-4.
[2] Arkansas, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Michigan, Minnesota, Missouri, Montana, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oregon, South Carolina and Wyoming statutes require active seeking. California's statute requires search for work as directed by the state employment office. Oklahoma's statute states: "Mere registration, reporting to, or the expectation that a local employment office, or an employer, will offer employment shall not in every case be evidence of ability to work, availability for work, or desire and willingness to work. In those cases where appropriate the Commission shall direct and require the claimant to do those things which a reasonably prudent individual could be reasonably expected to do to secure work." Okla. Stat.Ann. tit. 40, § 214.
[3] For examples, see: National Geographic Society v. District Unemployment Compensation Board, 141 U.S.App.D.C. 313, 438 F.2d 154 (1970); Department of Industrial Relations v. Mann, 35 Ala.App. 505, 50 So.2d 780 (1950); Cramer v. Employment Security Com'n. of Arizona, 90 Ariz. 350, 367 P.2d 956 (1962); Dawkins v. Florida Industrial Commission, Fla. App., 155 So.2d 153 (1963); Koenig v. Levine, 51 A.D.2d 615, 377 N.Y.S.2d 823 (1976); Texas Employment Commission v. Holberg, Tex., 440 S.W.2d 38 (1969); Denby v. Bd. of Rev. of Industrial Comm., Utah, 567 P.2d 626 (1977); In re Dunn, 131 Vt. 261, 305 A.2d 602 (1973); Virginia Employment Commission v. Meredith, 206 Va. 206, 142 S.E.2d 579 (1965).
[4] See for example the Oklahoma statute quoted in footnote 2, supra.
[5] The individual employment offices in the state were created by authority of W.Va.Code, § 21A-1-4:

There is created a department of employment security, composed of a division of unemployment compensation and a division of employment service, and such other divisions or units as the commissioner determines to be necessary.
Wherever, within this chapter, the term "department" is used, it shall be taken to mean department of employment security.
[6] § 21A-6-5. Considerations in determining if work is suitable.

In determining whether work is suitable for an individual, the commissioner shall consider:
(1) The degree of risk involved to the individual's health, safety, and morals.
(2) The individual's physical fitness and prior training.
(3) His experience and prior earnings.
(4) His length of unemployment.
(5) His prospects of securing local work in his customary occupation.
(6) The distance of the available work from his residence: Provided, however, that the distance from his new residence shall not be considered in determining suitable work if such distance from available work was created as the result of the individual voluntarily changing his residence to a locality other than that locality in which he resided at the time he voluntarily quit his last employment without good cause involving fault on the part of the employer.
[7] § 21A-6-6. New work not deemed suitable.

Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied to an individual, otherwise eligible, for refusing to accept new work under any of the following conditions:
(1) If the position offered is vacant due directly to a strike, lockout, or other labor dispute.
(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.
(3) If as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization.
[8] W.Va.Code, 21A-6-10 [1977], is a schedule of basic benefits which as enlarged by the commissioner of employment security, ranges from $14.00 per week for 26 weeks in any benefit year for an unemployed person whose base period earnings were between $700 to $800  to $139.00 for 26 weeks in any benefit year for such person whose base period earnings were $14,300.00 or more.

Base period wages are all those received in the first four of the last five completed calendar quarters of employment. W.Va.Code, 21A-1-3 [1977].